'(94 South. 316)

No. 24588.

**FLAHERTY et al. v. JACKSON et al.**

(Feb. 17, 1922. Final Judgment, Nov. 8, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Corporations** &#9860;400 — **Officers of surety company could not confer greater authority by power of attorney than authorized by resolution.**

Where resolution of directors authorized officers of indemnity company to appoint attorneys in fact to execute bonds, etc., required by the laws of the United States, municipal laws, or otherwise, such officers could confer no greater power than was embraced in the authority conferred on them by the resolution. (Per Baker, Land, Leche, and Thompson, JJ.)

2. **Principal and agent** &#9860;110(2) — **Mandate; "laws of United States" within resolution authorizing execution of powers of attorney to execute bonds defined.**

Under a resolution of directors of an indemnity company authorizing officers to appoint attorneys in fact to execute bonds required by the "laws of the United States," municipal laws, or otherwise, etc., the quoted words designated that great body of law deriving its origin, force, and sanction from Congress and from the authority of the United States government, and embraced every law which owes its origin and force to the lawmaking power of the national government. (Per Baker, Land, Leche, and Thompson, JJ.)

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Law of the United States.]

3. **Principal and agent** &#9860;110(2)—**Mandate; resolution, authorizing powers of attorney to execute bonds required by United States laws, "municipal laws," or otherwise, held to include state laws.**

Resolution of directors authorizing officers of indemnity company to execute powers of attorney, appointing attorneys in fact to execute bonds required by the laws of the United States, municipal laws, or otherwise, etc., included bonds required by state laws; as "municipal laws" means the law of a nation, state, or community, as distinguished from international law, and could not, under the rule of ejusdem generis, be restricted to municipal laws of the United States government, since "laws of the United States" completely exhausted the class, nor could they be disregarded as useless and meaningless. (Per Baker, Land, Leche, and Thompson, JJ.)

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Municipal Law.]

Provosty, C. J., and Dawkins and Overton, JJ., dissenting.

Appeal from Third Judicial District Court, Parish of Claiborne; W. U. Richardson, Special Judge.

Action by Lula Wade Flaherty and others against Charles J. Jackson and others. From a judgment for plaintiffs, defendants appeal. From a judgment refusing to dismiss defendants' appeal, plaintiffs appeal, and also move in the Supreme Court to dismiss defendants'

appeal. Motion to dismiss denied, judgment discharging rule to dismiss affirmed, judgment on the merits annulled and reversed, and suit dismissed by consent.

Monroe & Lemann and Blanchard, Goldstein & Walker, all of Shreveport, for appellants.

T. H. McGregor, of Shreveport, for appellee G. W. Shaw, Jr.

Thomas W. Robertson, of Shreveport, David Blackshear, of Homer, and Scarborough & Carver, of Natchitoches, for other appellees.

Farrar, Goldberg & Dufour, of New Orleans, for Union Indemnity Co.

By the WHOLE COURT.

### On Motion to Dismiss Appeal.

CAGE, District Judge. The plaintiffs brought a petitory action in the district court to revendicate a tract of 80 acres of land in the Claiborne oil fields worth more than $1,000,000, and recovered judgment according to the prayer of their petition.

The defendant applied for appeals to this court, devolutive and suspensive, and same were granted on a bond for $300 for the devolutive and $100,000 for the suspensive appeal.

The defendants, within the delays for a suspensive appeal, filed their bond for $100,000 with the Union Indemnity Company, a bonding, surety, and indemnity corporation, organized under the laws of Louisiana, and domiciled in the city of New Orleans as surety.

The plaintiffs moved in the lower court to dismiss the appeal, alleging that the bond was not good and sufficient and such as the law requires, for various reasons.

The judge of the lower court held that the bond was good and sufficient, and discharged the rule to dismiss.

The plaintiffs moved to dismiss in this court, and also appealed from the judgment refusing to dismiss in the lower court.

By brief and in argument the appellees and plaintiffs in motion to dismiss have abandoned all the grounds of their motion except one, which they urge upon us with great earnestness, ability, and plausibility.

A number of interesting questions have been raised involving an interpretation of Act No. 112 of 1916, and our right to receive evidence in this court, and the propriety of a remand for the purpose of receiving evidence as to the bond in the lower court, but the view we take of the merits of the objection to the bond renders a decision of them unnecessary.

The bond in question was signed for the surety company by Mr. Justin Querbes of Shreveport. He filed with the bond a power of attorney which declared that the Union Indemnity Company constituted and appointed him its agent and attorney in fact "to make, execute, seal and deliver for and on its behalf as surety and as its act and deed" the bond in question.

After fully empowering him to sign and execute the bond the power of attorney continued:

"This power of attorney is made and executed in accordance with and by the authority of the following resolutions adopted by the board of directors of the Union Indemnity Company at a meeting duly called and held on the 26th day of January, A. D. 1921:

" 'Resolved: That the president or the senior vice president, or second vice president, by and with the concurrence of the secretary or assistant secretary, be, and he is hereby authorized and empowered to make, execute and deliver, in behalf of the company, unto such person or persons as he may from time to time select, its power of attorney constituting and appointing each of such persons its attorney in fact for the purpose only of executing or attesting for and in its name and in its behalf any and all bonds, recognizances, obligations, stipulations, undertakings or anything in the nature of either of the same allowed or required by the laws of the United States of America, municipal laws or otherwise, or the rules, regulations, orders, customs, practices or discretion of any board, body or organization, office or officers of the United States of

America, local, municipal or otherwise, and any such instrument executed or attested by such attorney in fact, subject to the terms and limitation of the power of attorney issued to him, shall be as binding upon the company as if duly executed and acknowledged by the regularly elected officers of the company, at the office of the company in New Orleans, La., in their own proper persons,'" etc.

This power of attorney was signed:

"Union Indemnity Company, by W. Irving Moss, President: Attest: Wm. G. Konig, Assistant Secretary."

The ground on which the bond is declared to be worthless, and upon which alone it is now urged that the appeal should be dismissed is stated in the pleadings of the appellees 'as follows:

"First. Because Justin Querbes, who pretended to sign as agent and attorney in fact for the Union Indemnity Company the appeal bond herein furnished by defendant was without authority to sign said bond, and said bond is null and void and of no effect, because it is a bond required under the laws of the state of Louisiana, whereas, the resolution of the board of directors of the Union Indemnity Company, under which Justin Querbes pretended to execute the bond herein furnished, did not confer upon him any authority to sign any bond or bonds required by the laws of the state of Louisiana, but conferred upon him the authority 'only' of executing or attesting bonds required by the laws of the United States of America, municipal laws or otherwise, or the rules, regulations, orders, customs, practices, or discretion of any board, body, or organization, office, or officers of the United States of America, local, municipal, or otherwise."

[1] Orally, and in briefs, counsel for appellees contend that the officers of the surety company could confer no power on Querbes greater than is embraced in the authority conferred upon them by the resolution hereinbefore quoted.

In this we agree with them.

[2, 3] But they further contend that this authority was limited to bonds, etc., allowed or required by the laws of the United States of America.

In this we think that they are in error.

Their contention is that the words "laws of the United States of America," are particular words, and that the words "municipal laws, or otherwise" are general words, and that under the canon of construction, ejusdem generis, these words last quoted, must be held to relate only to laws of the same general character as those mentioned, namely, "laws of the United States of America," and consequently, that this resolution does not authorize the officers named in it to invest an agent with power to execute a bond under the laws of the state of Louisiana, being confined in its operation only to the appointment of agents for the making of bonds, etc., required or allowed under the laws of the United States.

The words are:

" * * * Allowed or required by the laws of the United States of America, municipal laws or otherwise."

The words "laws of the United States of America" convey a clear-cut concept. Written or spoken, they convey to the mind that great body of law which derives its origin, force, and sanction from the Congress of the United States, and from the authority of the government of the United States of America. In the same sense we say "the laws of England," "the laws of France," "the laws of Spain." And when we say "laws of the United States of America," without the use of any qualifying words, we mean every law which owes its origin and force to the law-making power of the national government. When thus used, the words are exhaustive, and embrace the municipal laws of the United States and every other kind of laws which the nation has.

But equally do not the words "municipal laws" convey a clear-cut concept to the mind?

Bouvier defines the terms "municipal" and "municipal laws" as follows:

"Municipal.

"Strictly this word applies only to what belongs to a city. It is used in this sense in the terms 'municipal court, municipal ordinance, municipal officer.'

"It has two meanings: (1) Relating to cities, towns and villages; (2) relating to the state or nation. 3 Wyo. 597. See 43 Ala. 598.

"Among the Romans, cities were called municipia; these cities voluntarily joined the Roman republic in relation to their sovereignty only, retaining their laws, their liberties and their magistrates, who were thence called municipal magistrates. With us this word has a more extensive meaning; for example, we call municipal law, not the law of a city only, but of the state. 1 Bla. Com. 44. Municipal is used in contradistinction to internation; thus, we say, an offense against the law of nations is an international offense, but one committed against a particular state or separate community is a municipal offense. See Municipium."

"Municipal Law.

"In contradistinction to international law the system of law proper to any single nation or state. It is the rule c law by which a particular district, communicy or nation is governed. 1 Bla. Com. 44.

"Municipal law contrasts with international law, in that it is a system of law proper to a single nation, state or community. In any one state the municipal law of another state is a foreign law. See Foreign Law. A conflict of law arises where a case arising in one state involves foreign persons or interests, and the foreign and the domestic laws do not agree as to the proper rule to be applied. See Conflict of Laws.

"The various provinces of municipal law are characterized according to the subjects with which they respectively treat; as, criminal or penal law, civil law, military law, and the like. Constitutional law, commercial law, parliamentary law, and the like are departments of the general province of civil law, as distinguished from criminal and military law."

In Webster's International Dictionary we find "municipal" defined as follows:

(1) "Of or pertaining to a city or a corporation having the right of administering local government, as municipal rights, municipal officers."

(2) "Of or pertaining to a state, kingdom or nation.

"Municipal law is properly defined to be a rule of civil conduct prescribed by the supreme power in a state. Blackstone."

Similarly, the New Standard Dictionary gives us the following definition of the word "municipal":

(1) "Relating to or pertaining to, or of the nature of a municipium."

(2) "Of or pertaining to a town or city, or to its corporate or local government, hence, pertaining to local self-government, as municipal politics, municipal freedom."

(3) "Of or pertaining to the internal government of a state, kingdom or nation."

"The Constitution of the United States in regard to the various municipal regulations and local interests, has left the states individual, disconnected, isolated. Webster Worsk, Landing at Plymouth, in vol. 11, p. 205 (L. B. & Co. 1858)."

The New Century Dictionary and Cyclopedia gives the following definition of the terms "municipal" and "municipal law":

"Municipal.

(1) "Of or pertaining to the local self-government or corporate government of a city or town."

(2) "Self governing, as a free city or town."

(3) "Pertaining to the internal affairs of a state, kingdom or nation, and its citizens, as municipal law (which see below)."

"Municipal Law.

"A rule of civil conduct prescribed by the civil power in a state, respecting the intercourse of the state with its members and of its members with each other, as distinguished from international law, the law of nations, etc. In this phrase, derived from the Roman law, the word 'municipal' has no specific reference to modern municipalities.

"The municipal laws of this kingdom * * * are of a vast extent and * * * include in their generality all those several laws which are allowed as the rule and direction of justice and judicial proceedings."

Sir M. Hale's Hist. of Common Law of England.

"I call it municipal law, in compliance with common speech; for, though strictly that expression denotes the particular customs of one single municipium or free town, yet it may with sufficient propriety be applied to any one state or nation which is governed by the same laws and customs." Blackstone, Com. Int. par. 2.

"The term 'municipal' (for local or provincial law) seemed to answer the purpose very well till it was taken by an English author of the first eminence to signify internal law in gen-

eral in contradistinction to international law, and the imaginary law of nature. It might still be used in this sense without any scruple in any other language." Bentham, Introd. to Morals and Legislation, XVII, 26, note.

In Black's Law Dictionary the terms "municipal" and "municipal law" are thus defined:

"Municipal.

"'Municipal' in one of its meanings, is used in opposition to 'international,' and denotes that which pertains or belongs properly to an individual state or separate community, as distinguished from that which is common to, or observed between all nations. Thus, piracy is an 'international offense' and is denounced by 'international law,' but smuggling is a 'municipal offense,' and is cognizable by 'municipal law.' "

"Municipal Law.

"In contradistinction to international law, is the law of an individual state or nation. It is the rule or law by which particular district, community, or nation is governed. 1 Bl. Comm. 44."

"That which pertains solely to the citizens and inhabitants of a state, and is thus distinguished from political law, commercial law, and the law of nations. Wharton."

In Wharton's Law Dictionary we find the following definition of the term "municipal law":

"Municipal Law.

"That which pertains solely to the citizens and inhabitants of a state, and is thus distinguished from political law, commercial law, and the law of nations."

In Cyc., vol. 28, p. 1778, the legal definition of "municipal law," as adduced from many authorities therein cited is thus stated:

"Municipal Law.

"A rule of civil conduct prescribed by the supreme power in a state [5] commanding what

is right, and prohibiting what is wrong; [6] a prescribed rule of civil conduct; [7] the expression of the legislative will of the state, according to the forms of the Constitution; [8] that which pertains solely to the citizens and inhabitants of a state, and is thus distinguished from political law and commercial law; [9] a law confined to a particular place; [10] the rule of law by which a particular district, community, or nation is governed." [11]

"This definition is criticized in Davis v. Ballard, 1 J. J. Marsh (Ky.) 563, 565, 576, as incompatible with the genius of our form of government; neither is it literally true as applicable to our system, in that we accept no supreme power except that of the people. The following definition is there given: 'Municipal law may be properly defined to be a rule of civil conduct, prescribed by any power in a state, having, according to its constitution or form of government, authority to act.' See, also, Currie's Adm'r v. Mutual Assur. Soc., 4 Hen. & M. (Va.) 315, 346, 4 Am. Dec. 517."

Blackstone (Cooley [2d Ed.] page 44, reprint page 43), whose definition of the term "municipal law" has been generally accepted by the courts of England and this country, thus expresses his understanding of the meaning of the term:

"Thus much I thought it necessary to premise concerning the law of nature, the revealed law, and the law of nations, before I proceeded to treat more fully of the principal subject of this section, municipal or civil law; that is, the rule by which particular districts, communities or nations, are governed; being thus defined by Justinian, "jus civile est quod quisque sibi populus constituit.' I call it mu-

[5] "Blackstone, Comm. 44 (quoted in Hunt v. Chicago, etc., R. Co., 20 Ill. App. 282, 288; People v. Tiphaine, 3 Parker Cr. R. [N. Y.] 241, 244; Currie's Adm'rs v. Mutual Assur. Soc., 4 Hen. & M. [Va.] 315, 346, 4 Am. Dec. 517; Hulings v. Hulings Lumber Co., 38 W. Va. 351, 370, 18 S. E. 620; Higbee v. Higbee, 4 Utah, 19, 27, 5 Pac. 693); Burrill, L. Dict. (quoted in Root v. Erdelmyer, Wils. [Ind.] 99, 106); I Kent, Comm. 446 (quoted in Rohrbacher v. Jackson, 51 Miss. 735, 773)."

[6] "Blackstone, Comm. 44 (quoted in Hunt v. Chicago, etc., R. Co., 20 Ill. App. 282, 288; Hulings v. Hulings Lumber Co., 38 W. Va. 351, 371, 18 S. E. 620, where it is said: 'The rule of civil conduct is based upon certain principles which can neither be ignored nor left out. These principles controlled in their application by custom constitute the common law'); Currie's Adm'rs v. Mutual Assur. Soc., 4 Hen. & M. (Va.) 315, 346, 4 Am. Dec. 517."

[7] "Ward v. Barnard, 1 Aikens (Vt.) 121, 128."

[8] "State v. Johnson, 25 Miss. 625, 747."

[9] "Wharton, L. Lex. (quoted in Root v. Erdelmyer, Wils. [Ind.] 99, 106. To the same effect is Winspear v. Holman Dist. Tp., 37 Iowa, 542, 544; Cook v. Portland, 20 Or. 580, 583, 27 Pac. 263, 13 L. R. A. 533, where it is said: 'The term is not confined to the law of a city only'). Burrill, L. Dict. (quoted in Root v. Erdelmyer, Wils. [Ind.] 99, 106)."

[10] "Somerset v. Stewart, Lofft. 1, 12."

[11] "Burrill, L. Dict. (quoted in Root v. Erdelmyer, Wils. [Ind.] 99, 106)."

nicipal law in compliance with common speech; for, though strictly that expression denotes the particular customs of one single municipium or free town, yet it may, with sufficient propriety, be applied to any one state or nation, which is governed by the same laws and customs.

"Municipal law, thus understood, is properly defined to be a 'rule of civil conduct prescribed by the supreme power in a state, commanding what is right and prohibiting what is wrong.'

"But, farther, municipal law is 'a rule of civil conduct prescribed by the supreme power in a state.' For legislature, as was observed, is the greatest act of superiority that can be exercised by one being over another: Wherefore, it is requisite to the very essence of a law that it be made by the supreme power. Sovereignty and legislature are indeed convertible terms; one cannot subsist without the other."

See, also, Hunt, Atty. Gen., v. Chicago & Dummy R. Co., 20 Ill. App. 282, 288; People v. Tiphaine, 3 Parker Cr. R. (N. Y.) 241, 244; Currie's Adm'rs v. Mutual Assur. Soc., 4 Hen. & M. (Va.) 315; Hulings v. Hulings Lumber Co., 38 W. Va. 351, 370, 18 S. E. 620; Higbee v. Higbee, 4 Utah, 19, 5 Pac. 693; Kent's Comm. on American Law, vol. 1 (11th Ed.) p. 446 (reprint, p. 484); Davis v. Ballard, 1 J. J. Marshall (Ky.) 563; Ward v. Barnard, 1 Aikens (Vt.) 121; Winspear v. District Township of Holman, 37 Iowa, 542.

We thus see that in the power granted to its officers to appoint agents, the corporation mentioned two bodies of law, viz. (1) "the laws of the United States of America" and (2) "municipal laws."

Did the board of directors intend to refer to *two* bodies of law, or did they intend, *only*, to refer to *that* body of law known as the laws of the United States?

Counsel for appellees ask us to put aside all the rules of construction save only that known as noscitur a sociis or ejusdem generis, and to hold that the words "municipal laws" is a general term, like the words "or otherwise" and take their color from, and refer to, the particular words "laws of the United States of America."

In other words they seek to have us give meaning to only the first words of the clause. "laws of the United States of America," and to ignore the other words, or to interpret them as if they had been written "municipal laws of the United States, or other laws of the United States."

If we should ignore and disregard every canon of construction except the rule "ejusdem generis" and interpret the document by its light alone, would we be justified, thereby in interpreting it as in the paragraph just above?

In 25 Ruling Case Law, title, Statutes, subtitle, Ejusdem Generis, par. 240, page 998, we find an exposition of the doctrine or rule which seems to us exhaustive, and to which we subscribe.

"The doctrine of ejusdem generis is, however, but a rule or construction to aid in ascertaining the meaning of the Legislature, and does not warrant a court confining the operation of a statute within narrower limits than intended by the lawmakers. The general object of an act sometimes requires that the final general term shall not be restricted in meaning by its more specific predecessors, and if, on consideration of the whole law upon the subject, and the purposes sought to be effected, it is apparent that the Legislature intended the general words to go beyond the class specially designated, the rule does not apply. Thus, for instance, it has been held that the expression 'building or other property,' used in a statute making railroad companies liable for fires caused by their locomotives, without contributory negligence on the part of the owner of the property, includes fences, growing trees, and herbage. The rule ejusdem generis does not apply where the specific words signify subjects greatly different from one another. And where the particular words embrace all the persons or objects of the class mentioned, and thereby exhaust the class or genus, there can be nothing ejusdem generis left for the rule to operate on, and a meaning must be given to the general words different from that indicated by the specific words, or there can be ascribed to them no meaning at all."

Another statement of the proper application of the doctrine, which comports with our views, is found in the case of National

Bank of Commerce v. Ripley, 161 Mo. 126, 61 S. W. 587:

" 'It is a rule of construction that a statute should be construed so as to give effect to all its words, if it can be done. Out of that rule grew the further rule on which respondent relies, that is, that when particular words of description are used, followed by general words, the latter are to be limited in their meaning so as to embrace only a class of things indicated by the particular words. * * * But this is only a rule of construction to aid us in arriving at the real legislative intent. It is not a cast-iron rule, it does not override all other rules of construction, and it is never applied to defeat the real purpose of the statute, as that purpose may be gathered from the whole instrument. It is a corollary to the first proposition above stated that the statute must be construed to give effect to all its words. The rule itself must not be so construed as to defeat that purpose. Whilst it is aimed to preserve a meaning for the particular words, it is not intended to render meaningless the general words. Therefore, where the particular words exhaust the class, the general words must be construed as embracing something outside of that class. If the particular words exhaust the genus, there is nothing ejusdem generis left, and in such case we must give the general words a meaning outside of the class indicated by the particular words or we must say that they are meaningless, and thereby sacrifice the general to preserve the particular words. In that case the rule would defeat its own purpose.' "

Now applying these expositions, or definitions, of ejusdem generis, we find that the particular words "laws of the United States of America," "exhaust the class," and the general words (if indeed they be "general words") "municipal laws," "must be construed as embracing something outside of that class," and "there is nothing ejusdem generis left, and, * * * we must give the general words a meaning outside of the class indicated by the particular words, or we must say that they are meaningless, and thereby sacrifice the general to preserve the particular words."

If A. had a large tract of land, and should, in writing, authorize B. to enter thereon and shoot "wolves, bears, wild cats, raccoons, opossums, squirrels and any other animals found thereon," and B., acting under this power, should shoot a deer and a panther, when called to account, he could justify under the doctrine, ejusdem generis, for the "particular words" all described animals feræ naturæ, and the general term "and any other animals found thereon" would be held to refer to any other animal feræ naturæ. But he could not thereunder, because of the doctrine, justify the shooting of a cow and sheep.

But if the power was to shoot "all animals feræ naturæ, and any other animals," he could justify the shooting of the cow and the sheep, for the reason that the words "all animals feræ naturæ," "exhaust this class," and the court would either have to strike out of the document the words "and any other animals" as useless and meaningless, or hold that they referred to animals, mansuetæ naturæ, such as the sheep and the cow, and by all the canons of construction the court would have no right to strike out the words as useless and meaningless, if any reason whatsoever could be found for giving them effect.

Can we strike out the words "municipal laws or otherwise" as useless and meaningless?

In 6 Ruling Case Law, title, Contract, subtitle, Interpretation and Effect, page 834, we find:

"Generally speaking, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. It has been said that to this paramount rule all others are subordinate.

*     *     *     *     *     *     *

" * * * The intention of the parties is to be ascertained from the words employed, the connection in which they are used, and the subject-matter in reference to which the parties are contracting. The subject-matter of the contract and the purpose of its execution are material to the ascertainment of the intention of the parties and the meaning of the terms they used, and when these are ascertained they must prevail over the dry words of the agreement. As an aid to ascertaining what the par-

ties intended and understood by the words employed, the object in making the agreement may be taken into consideration, although the purpose declared in one clause cannot overcome or alter the whole contract or change its manifest purpose apparent from all the parts taken together. It is always of much importance in the interpretation of a contract, upon which doubt arises, to ascertain what was the attitude of the parties to the subject, and to find out what was their main purpose and object in making it. If this can be done, the terms of the contract will be so construed as to promote the main purpose, if the language employed will fairly permit such construction. This statement of the general rule necessarily implies that explicit and positive language importing a different purpose cannot be overruled, but must be given its obvious meaning.

"The intention of the parties, which courts seek to discover in giving construction to a contract, is to be gathered, not from particular words and phrases, but from the whole context of the agreement. In fact, it may be said to be a settled rule in the construction of contracts that the interpretation must be upon the entire instrument, and not merely on disjointed or particular parts of it. The whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated clause. Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument. The contract must be viewed from beginning to end, and all its terms must pass in review; for one clause may modify, limit, or illuminate the other. Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized if that course is reasonably possible. Each of its provisions must be considered in connection with the others, and, if possible, effect must be given to all. A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all of its provisions. The courts will look to the entire instrument, and, if possible, give such construction that each clause shall have some effect, and perform some office."

The Union Indemnity Company is a surety or bonding company whose business consists of furnishing bonds, and its revenues are derived from the premiums it receives for writing these bonds. It is in the nature of things that it wants to get as much remunerative and profitable business as possible. It is well known that an immense reservoir of such business lies in the requirements of various state laws for the furnishing of bonds, as well as in those of cities, towns, parishes, and the political agencies and political subdivisions. It must be that these, combined, enormously exceed the demand for bonds under the laws of the United States.

The corporation, therefore, had a lively interest in extending its business to this large field, and a distinct disadvantage in restricting it to the narrow field of the federal laws.

And where we are justified under the rules of construction in giving such effect to the words "municipal laws or otherwise" as to make possible this much to be desired result, we would not be justified in expunging them from the instrument as meaningless and useless.

If we were in doubt, we would resolve it in favor of preserving the appeal, but we have no doubt that the resolution was intended to authorize the officers of the indemnity company to appoint agents with the power to execute bonds under municipal laws of this state and other states of the Union and foreign states and countries in which the corporation may be admitted to do business. And we have no doubt that in such cases, where the obligees should sue on the bonds, the indemnity company would find the rule ejusdem generis but a broken reed, when they sought to use it as a weapon of defense.

The motion to dismiss in this court is denied, and the judgment of the lower court discharging the rule to dismiss therein is affirmed.

ST. PAUL, J., concurs in the decree.

PROVOSTY, C. J., and DAWKINS and OVERTON, JJ., dissent.

O'NIELL, J., is recused.

## Final Judgment.

In this matter, all counsel having joined in a motion for judgment in pursuance of compromise, and it appearing from said motion that the controversy involved herein has been compromised and settled, and the parties having agreed that a judgment should be entered in this court, rejecting plaintiffs' demands and dismissing their suit.

It is ordered, adjudged, and decreed that the judgment in the lower court be, and it hereby is, annulled, avoided, and reversed, and that the demands of the plaintiffs in the above entitled and numbered matter be, and they hereby are, rejected, and their suit be and it hereby is dismissed.

O. O. PROVOSTY,
J. ST. PAUL.
W. OVERTON.
J. G. BAKER.
J. R. LAND.

In this cause, his Honor, Mr. Justice O'NIELL, being recused, and their Honors being divided in opinion as to the proper determination to be made of the issues involved, Judge H. C. CAGE, of the Civil District Court, Parish of Orleans, Division A, having been called upon by previous order of this court to sit in the case, pronounced the opinion and judgment of the court therein.