McBRIDE, Judge.
The late Joseph A. Airey, whose death occurred on February 13, 1949, left 1750 shares of the capital stock of Monteleone Investment, Inc., and 1000 shares of the ■capital stock of New Hotel Monteleone, Inc., which passed to his widow and two ■children by a judgment recognizing them in their respective capacities in the proceedings entitled “Succession of Joseph A. Airey,” No. 288-334 of the docket of the Civil District Court for the Parish of Orleans. The shares inherited by the children of the decedent were made subject to a trust, wherein The Hibernia National Bank of New Orleans and Mrs. Marguerite S. Airey, widow of the decedent, were named as cotrustees.
Frank J. Monteleone brings this suit, seeking to have it judicially declared that undet the terms of -a written option granted him by Joseph A. Airey he has the right to purchase from the widow and children of the decedent the said stock in the two corporations. He impleaded as defendants the decedent’s widow, decedent’s two children, and the cotrustees.
From the judgment of the trial court, whi-ch rejected Monteleone’s demands and which further decreed him to be not entitled to have and acquire from the defendants any of the stock in question, plaintiff appealed to the Supreme Court of Louisiana; on January 22, 1952, pursuant to a joint motion of counsel representing all parties, the court ordered the appeal transferred to *259 us, for the reason that it was within our jurisdiction, it not appearing that the amount in dispute exceeds the sum of $2,-000.00 exclusive of interest.
On October 31, 1941, Joseph A. Airey entered into a written agreement of partnership with Frank J. Monteleone and Anthony V. Monteleone for the purpose of carrying on and operating the Hotel Monteleone and a laundry and dry cleaning establishment. The articles of partnership stipulated that the partnership “shall continue until May 1st, 1948.” It was further recited that the interests of the partners in the partnership enterprise were: Frank J. Monteleone 2%8; Anthony V. Monteleone Wís; and Joseph A. Airey 1%8.
On August 1, 1946, during the term of the partnership, a corporation styled “New Hotel Monteleone, Inc.,” with a capitalization of 4800 shares of no par value stock, was organized for the purpose of carrying on a general hotel and restaurant business and a laundry and cleaning business. The three partners, that is to say, Frank J. Mon-teleone, Anthony V. Monteleone, and Joseph A. Airey, signed the charter as in-corporators and subscribed for certain shares of stock. By an act of sale confect-ed on the same day, Frank J. Monteleone, Anthony V. Monteleone, and Joseph A. Airey sold and transferred unto the corporation all of the assets of their partnership, inclusive of good will. The parties, as part consideration of the sale, received a certain allotted amount of the capital stock of New Hotel Monteleone, Inc., and the corporation, as one of the considerations, assumed all of the debts and liabilities of the partnership. Upon the completion of the incorporation and the simultaneous passing of the act of sale, -the partners received the whole issue of the capital. stock of the corporation in the same proportions as were their respective interests in the partnership. Frank J. Monteleone received 2200 shares, Anthony V. Monteleone received 1600 shares, and Joseph A. Airey received 1000 shares.
Certain negotiations, all shown iby the record, which led up to the formation of the partnership, reflect that the 1750 shares of stock in Monteleone Investment, Inc., had been purchased by Frank J. Monte-leone from a Mrs. Stella Kenney Burns for the specific purpose of selling them to Joseph A. Airey as part of the consideration for the formation of the partnership, although this particular stock was never a part of the partnership assets. Airey acquired the 1750 shares of stock of Monte-leone Investment, Inc., from Frank J. Monteleone for a cash consideration of $260,000.00. Monteleone Investment, Inc., owns what is known as Hotel Monteleone Annex, which is leased by it to the New Hotel Monteleone.
The record discloses that Anthony V. Monteleone died on November 8, 1948, and that by judgment in his succession proceedings Frank J. Monteleone, as the decedent’s residuary legatee, was sent and placed into possession of the 1600 shares of stock which Anthony V. Monteleone owned in New Hotel Monteleone, Inc.
Plaintiff claims that his right to purchase the 1750 shares of Monteleone Investment, Inc., and the 1000 shares of New Hotel Monteleone, Inc., flows from an option granted to him by Joseph A. Airey, which is incorporated in the articles of partnership. As we view the case, our sole concern is with an interpretation of article 6 of the partnership agreement, which reads and provides as follows:
“(6) In the event of the death of Frank J. Monteleone or of Anthony V. Monte-leone during the term of this partnership, their heirs or executors, or administrators shall be entitled to continue their interests in this partnership until the expiration of the partnership term.
“In the event of the death of Joseph A. Airey, then Frank J. Monteleone and Anthony V. Monteleone shall have the option of purchasing the Airey interest in the firm, including the real estate, and stock of Monteleone Investment, Inc., at book value, or cost to said Airey, whichever is higher, at the end of any fiscal year, provided they give six months written notice to the heirs, executors, administrators of Joseph A. Airey of such intention to buy, prior to the time the purchase is to be made.
“If the option given above is not exercised, then the Airey executors, administrators *260 or heirs have the right to continue their interest in this partnership until the end of the partnership term.”
Appellant’s first contention is that the parties never intended that the option would cease or terminate upon the incorporation of the business or upon the expiration of the partnership term.
Monteleone, in his original petition, alleged that Airey had “agreed, and continued to agree up to the time of his death” that Monteleone should have the option to acquire this stock. In an amended petition, Monteleone alleged that Airey never at any time denied Monteleone’s right to acquire the Airey interest in the businesses, and that at all times Airey recognized the right of Monteleone to acquire said interest, notwithstanding that the corporation succeeded to the affairs of the partnership.
Despite the above referred to allegations, no effort whatsoever was made to prove them. Monteleone himself did not take the witness stand, nor did he offer any other evidence in support of the allegations.
However, Mrs. Airey testified as to a conversation which she had with Frank J. Monteleone, and the nature thereof strongly indicates that there was no understanding between Frank J. Monteleone and Airey relative to a continuance of the option. Mrs. Airey quoted Monteleone as having said: “‘You know, Mrs. Airey, we wanted to combine the two corporations but Tony always objected. Now that Tony is gone we would like to put the two together.’ He went on to explain it. I said, ‘Mr. Monte-leone, I don’t know anything about that.’ He said, ‘Tony’s estate is not settled and we would have to do that after his estate is settled.’ ”
Counsel for appellant further argues that even though there was no specific understanding that the option would continue in force after the advent of the corporation, the legal effect, nevertheless, is that the option did continue in force, as the corporation was but a continuation of the partnership business in a different form. Counsel’s position is that there existed a tacit understanding between the parties that the option would continue to be effective, as manifested by the dealings and negotiations between Airey and the Monte-leones leading up to the incorporation of the venture.
Prior to the formation of the partnership, the Hotel Monteleone and the cleaning and laundry business run in conjunction therewith were owned in indivisión by the two Monteleones and Mrs. Stella Kenney Burns. In a written but undated memorandum, the Monteleones and Airey set out in detail the steps that would be taken to acquire the property, with a view to entering into the partnership which was later formed. According to the memorandum, it was agreed, among other things, that Frank J. Monteleone and Anthony V. Mon-teleone would acquire Mrs. Burns’s interest in the hotel property in indivisión, and that they would compromise certain differences among themselves, which were the subject of a pending lawsuit, and that they would simultaneously transfer a 10/i8 interest in the hotel and the laundry and cleaning business to Joseph A. Airey for a consideration of $261,578.95, and that thereafter the parties would operate the hotel and laundry and cleaning business as a copartnership. The memorandum also set forth that Frank J. Monteleone alone would purchase Mrs. Burns’s 1750 shares in Monteleone Investment, Inc., and that he would, coincidentally with the transfer to Airey of the 1%s interest in the partnership property, sell the 1750 shares of Monteleone Investment, Inc., to Airey for $268,000.00.
Appellant’s counsel also confidently points out that immediately upon its creation the corporation took over in toto the partnership business, and that the opening balance sheet of the corporation was the same as the closing balance sheet of the partnership. This, counsel reasons, demonstrates that the corporation was but a continuation of the partnership business in a different form, and that the mere change in the form of the operations had no effect whatsoever upon the option granted by Airey to the Monteleones in the articles of partnership.
It is quite true that New Hotel Monteleone, Inc., was organized for the sole and specific purpose of taking over and operating the business of the partnership, but we cannot agree with counsel that the 'corporation, can legally be considered as *261 a continuation of the partnership. A partnership and a corporation are two different and distinct legal entities; the rights and obligations of a partner are not at all similar to the rights and obligations of a stockholder in a corporation.
Article 6 of the agreement of partnership is the only portion thereof which fixes and establishes the rights of the parties inter sese in the event of the death of one of them. It is recited that the event of the death of either Frank J. Monteleone or Anthony V. Monteleone during the term of the partnership their respective heirs or personal representatives shall be entitled to continue their interest in the partnership for the full term thereof. The second paragraph of article 6 sets forth the rights of Frank J. Monteleone and Anthony V. Monteleone to acquire the Airey interest in the firm, in the event of the death of Joseph A. Airey. According to the option therein granted to the Monteleones, in the event of Airey’s death, they had the right to purchase his interest in the firm, including the real estate and Monteleone Investment, Inc., stock, at book value or the cost thereof to Airey, whichever was higher. It is then stipulated in the final paragraph of the article that if the option is not exercised by the Monteleones, then the heirs or personal representatives of Airey shall have the right to continue their interest in the partnership until the end of the term thereof.
While it is true that the second paragraph of article 6 makes no specific reference to or mention of the fact that the option would be effective only if the death of Airey occurred during the term of the partnership, the whole tenor of article 6 is that the article was intended to regulate, and did regulate, the rights as between the surviving partners and heirs or personal representatives of a partner dying during the partnership term. This is clearly evident from the final paragraph of article 6, which provides that if t)he Monteleones do not exercise the option given them, the Airey heirs or personal representatives shall have the right to continue their interest in the partnership until the end of the partnership term.
Counsel would have us isolate the second paragraph of article 6 and interpret that paragraph alone, his contention being that nowhere in said paragraph is it stated that the right of the Monteleones to purchase the Airey interest in the firm was dependent upon Airey’s death occurring during the term of the partnership.
As we have before said, article 6 was intended to regulate the rights of the interested parties in the event of a death of one of the partners. This being so, it necessarily, follows that in seeking the intent of article 6 the whole thereof must be construed and interpreted, each clause in light of the others, so that none of the language used by the parties is rendered nugatory or inconsistent. R.C.C. art. 1955. The intention of the parties to a contract should not be determined by an isolated clause or phrase, but rather should be gathered from the whole context of the agreement. Flaherty v. Jackson, 152 La. 679, 94 So. 316.
A most exacting study and analysis of all of the provisions of article 6 as appears in the partnership contract leads us to the unshaken conclusion that the option upon which plaintiff bases his claim was intended to subsist only during the life span of the partnership.
Upon the corporation purchasing and taking over the business of the partnership, the partnership came to the end of its legal existence. By the terms of the agreement, the partnership was to have a legal existence until May 1, 1948. The charter of the corporation was'executed on August 1, 1946, and simultaneously the parties transferred all of the assets of their partnership to the new corporation. There can be no question that by thus transferring the partnership assets to the corporation the parties themselves, iby their own will, brought an end to the partnership.
Upon all of the assets of the partnership being lawfully transferred to the corporation created by the partners, the partnership became functus officio and ceased to exist. In 68 C.J.S., Partnership, § 344, p. 851, appears the following language: “When the entire property of the partner *262 ship is sold or disposed of, the firm ceases to exist. Thus the transfer of all the firm assets to a corporation ordinarily will work a dissolution of the partnership, * *
There are other circumstances appearing in the case which bolster the conclusion which we have expressed. From the documents offered in evidence, we gather that the Monteleones and Joseph A. Airey, all shrewd business men, were very meticulous in reducing to writing their agreements. It seems to us that if the parties intended that the option to purchase the Airey interest was to continue on after the partnership was dissolved by the act of the parties in transferring the assets to the corporation, some statement or provision would have been made in the charter, or in some separate agreement, to that effect. It has not been shown that there was any separate agreement, and this fact, coupled with the fact that the charter contains no provision granting to the Monteleones any rights with respect to the purchase of the Airey stock, gives every indication that there was no such understanding.
Not alone that, but the provisions of the charter or New Hotel Monteleone, Inc., are inconsistent with any idea that the option to purchase the Airey stock continued to exist notwithstanding that the partnership affairs became vested in the corporation. We specifically refer to article IX of the corporate charter, part of which we quote: “'Stockholders of this corporation are prohibited from selling or disposing of any of the corporation stock without first offering the same to the corporation at a price equal to the book value thereof. The offer shall be made in writing and shall be delivered to the corporation at its place of business number 214 Royal Street, in New Orleans. The corporation shall have 20 days from the date such offer is received within which to’ accept or reject the same. Stock so offered to the corporation may be purchased by it out of capital as well as out of surplus.”
Surely there would have been no room in the ■charter for article IX if, as the plaintiff claims, an understanding existed to the effect that the Monteleones had the option of purchasing Airey’s stock in the event of his death.
We think that article IX of the charter of New Hotel Monteleone, Inc., was intended to and conclusively did supersede any prior agreement between the parties concerning the subject-matter of the Airey interest, as the terms of the partnership agreement and the corporate charter are wholly and irreconcilably in conflict.
In 17 C.J.S., Contracts, § 395, p. 886, we find the following: “A contract complete in itself will be conclusively presumed to supersede and discharge another one made prior thereto between the same parties concerning the same subject matter, where the terms of the later are inconsistent with those of the former so that they cannot subsist together. * * * ”
Appellant advances the alternative argument that the right to exercise the option to purchase Airey’s 1750 shares of stock in Monteleone Investment, Inc., was not contingent upon the continued existence of the partnership. Counsel seeks to impress upon us that Monteleone Investment, Inc., was a corporation separate and apart from the partnership and from New Hotel Monteleone, Inc. He stresses that the stock of Monteleone Investment, Inc., never at any time formed part of the partnership assets, and that the option given t0‘ the Monteleones to purchase the stock of Mon-teleone Investment, Inc., was a collateral agreement, separate and apart from the right to purchase Airey’s interest in the firm, and that, therefore, a continuance of the partnership was not a condition precedent for Monteleone’s right to exercise the option.
Again we cannot agree with counsel. It seems to< us that article 6 of the contract of partnership clearly and unambiguously regulated the option of the Monteleones to purchase. Airey’s interest in the then partnership firm, including Airey’s stock in Monteleone Investment, Inc., and that tihe option was effective both as to the interest in the firm and the Monteleone Investment, Inc., stock only so long as the partnership existed between the parties.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
REGAN, J., dissents.