JiCOOKS, Judge.
Steven W. Cook appeals the trial court’s judgment finding the former law partnership of Gist, Methvin, Hughes and Munsterman was terminated on December 31, 1990, by unanimous consent of its partners. Cook further contests the trial court’s decision that the partnership was liquidated by the transfer of its assets to the professional law corporation of Gist, Methvin, Hughes and Mun-sterman (Gist PLC); and its further finding that Cook has a twelve percent interest in the Gist PLC.
FACTS
In 1981, Cook became associated with Gist, Methvin, Hughes and Munsterman (the Gist partnership). There were no written articles nor any other document regulating the partnership other than a small notebook page signed by all partners indicating their respective percentages of ownership. Cook became a partner |2on November 1, 1983, receiving a seven percent interest in the firm’s dividends. He was excluded, however, from any interest in unbilled accounts receivable until November 1, 1986, and had no interest in the furniture, fixtures, library, improvements or tangible property of the firm until November 1, 1988. As'of October 1, 1990, Cook held an 11.5% interest in the firm’s dividends and a 12% interest in the firm’s accounts receivable and tangible property.
The Gist partnership’s practice consisted primarily of insurance defense, business and property work. But the firm also represented Security First National Bank of Alexandria (Bank). For many years, Howard B. Gist, Jr., a Gist partner, was a member and chairman of the Bank’s board of directors, and the partnership handled more than eighty percent of the Bank’s legal work. Beginning in 1988 the Bank became a target for closure by the Federal Deposit Insurance Corporation and the Office of the Comptroller of Currency, the federal agencies which regulate national banks. In an effort to eliminate their personal liability exposure, the Gist partners called a meeting to consider restructuring the firm to a corporation. All partners, including Cook, attended the December 18, 1990 meeting. Immediately afterwards, partner John W. Munsterman drafted a letter to W. Brent Pearson, an attorney, requesting that Pearson prepare documents for the incorporation of the Gist partnership. In his letter, Munsterman stated the Gist partnership would terminate on December 31, 1990 and transfer all of its assets to the new corporation.
On December 31, 1990, the articles of incorporation of Gist, Methvin, Hughes and Munsterman, A Professional Law Corporation (Gist PLC), were signed by former partners Gist Jr., Cook, Dewitt T. Methvin Jr., David A. Hughes, John W. Munsterman and Howard B. Gist III. The articles were properly filed with the Secretary of State and the Clerk of Court for Rapides Parish. The Gist partners also | 3visited Security First National Bank, signed documents and furnished a corporate resolution which changed the partnership’s trust and operating bank accounts to Gist PLC corporate accounts. Firm members were thereafter paid a regular salary on the first and fifteenth of each month. Mun-sterman was named secretary and kept the minutes of the Gist PLC’s regularly held board of director meetings. His records showed that on December 31,1990, the board of directors unanimously decided that one thousand shares of common capital stock in the corporation would be issued at one dollar per share.
Cook withdrew from the practice of law with the Gist PLC on May 31, 1991. By^ cover letter dated October 25, 1991, he received a stock certificate representing his ownership in 120 shares of the Gist PLC. On May 19, 1992, he filed a suit for Payment of Value of Partnership Share, naming the Gist partnership and each partner, individually, as defendants. The Gist PLC then filed a petition for declaratory judgment, which Cook *811 answered. The suits were consolidated and trial was held on June 27,1996.
Cook maintained below he never consented to termination of the partnership, and even if the court found differently, the $1000 worth of stock issued by Gist PLC for the partnership assets was not adequate consideration. In response, the Gist partners presented testimonial evidence that Cook did consent or, at least, quietly acquiesced to the conversion and conveyance; and, they argued hé now wishes to enjoy the limited liability provided by the corporate restructuring without giving up his interest in the partnership. The former partners also urged “Cook could not participate actively in the incorporation of the PLC ... while maintaining a secret and silent intent to continue practicing law as a partnership.” The trial court held the Gist partnership terminated on December 31, 1990, and was liquidated by the transfer of |4all assets of the former partnership to the Gist PLC. He found Cook was a twelve percent stockholder in the Gist PLC. Cook’s claims were ultimately dismissed with prejudice, and he now assigns as error the following issues for review:
I. Did the law partnership of Gist, Meth-vin, Hughes & Munsterman terminate on December 31,1990?
II. Was the partnership of Gist, Methvin, Hughes & Munsterman liquidated effective December 31,1990?
III. Is Steven W. Cook entitled to a judgment against Gist, Methvin, Hughes & Munsterman, a partnership, and its remaining partners, in an amount equal to the value of his partnership interest?
ASSIGNMENTS OF ERROR NOS. I & II
By the first two assignments, Cook questions whether the Gist partnership was terminated and/or liquidated on December 31, 1990. Because the issues he raises are interrelated we elect to address them together.

Termination

Louisiana Civil Code article 2826 reads in pertinent part:
Unless continued as provided by law, a partnership is terminated by: the unanimous consent of its partners; a judgment of termination; the granting of an order for relief to the partnership under Chapter 7 of the Bankruptcy Code; the reduction of its membership to one person; the expiration of its term; or the attainment of, or the impossibility of attainment of the object of the partnership.
A partnership also terminates in accordance with provisions of the contract of partnership. (Emphasis applied.)
Cook submits he ratified neither the termination of the partnership nor the transfer of his partnership interest to the Gist PLC. He contends the December 18, 1990 partners’ meeting was simply an informational discussion about the potential tax implications of the corporate structure. In addition, while admitting he 1 gfailed to raise any objections at the meeting, Cook asserts “no conclusion, no decision was ever made about what we were going to do.” The trial court was not convinced and evidently weighed heavily the fact that Cook did not articulate his alleged disagreement with the proposal to the other partners at the December 18, 1990 meeting. Furthermore, Cook signed the articles of incorporation for the Gist PLC on December 31, 1990; and, he later became a signatory on the corporate account at Security First National Bank. He also signed and used without objection .the Gist professional law corporation letterhead. Reviewing the evidence as a whole, we cannot find the court manifestly erred in concluding that the partners unanimously intended to terminate the partnership. Accordingly, we affirm the lower court’s ruling on this issue. See Lewis v. State Through Dept. of Transp. and Development, 94-2370 (La.4/21/95); 654 So.2d 311; Kilpatrick v. Alliance Cas. and Reinsurance Co., 95-17 (La.App. 3 Cir. 7/5/95); 663 So.2d 62, writ denied, 95-2018 (La.11/17/95); 664 So.2d 406; Phelps v. White, 94-267 (La.App. 3 Cir. 10/5/94); 645 So.2d 698; writ denied, 95-151 (La.3/17/95); 651 So.2d 272. Though we are satisfied the evidence establishes the partnership’s business dealings ceased on December 31, 1991, our review does not end here.

*812
Liquidation

Louisiana Civil Code article 2828 provides in part “[w]hen a partnership terminates, the business of the partnership ends except for the purposes of liquidation.” Co-dal article 2835 declares that “[t]he liquidation of a partnership is not final until all its assets have been collected and applied to its obligations and its remaining assets, if any, have been appropriately distributed to the partners.” As of the date his membership in the Gist partnership ceased (December 31, 1990), Cook held a 12% interest in a partnership which assets were valued at $54,485. Cook now asks | fi“What happened to the other $53,000 plus in partnership assets?” The former partners insist the remaining partnership assets were used to capitalized the new corporation. They argue their decision to use all the partnership assets to capitalize the corporation was legal and sanctioned by the decision in Monteleone v. Airey, 57 So.2d 257, (La.App.Orl.1952). In that ease, the old Orleans Court of Appeal held in 1952 “[u]pon all the assets of [a former partnership] being lawfully transferred to the corporation created by the partners, the partnership became functus officio and ceased to exist.” The court further held “the transfer of all the firm assets to a corporation ordinarily will work a dissolution of the partnership.” Id. at 262. Relying on this language the defendants urge they transferred the assets of the partnership to the Gist Corporation; and, as a result, the partnership was dissolved. The partners maintain further this act of transfer was sufficient to constitute a final liquidation of the partnership; and Cook now owns only the corporate stock shares assigned him for his 12% interest in the partnership.
On first reading, the holding in Monteleone seems to support defendants’ argument, albeit inconsistent with the express mandate found in Civil Code article 2835. The Mon-teleone court relied on 68 C.J.S. Partnership, See. 344, p. 851 which reads: “ ‘[w]hen the entire property of the partnership is sold ... disposed of, the firm ceases to exist.’ ” Id. at 261-262. However, the courts have generally held a dissolved partnership “maintains a fictional existence with respect to its past transactions and existing assets until its affairs are wound up and completed.” Roy v. Gravel, 570 So.2d 1175 (La.App. 3 Cir.1990), writ denied, 573 So.2d 1118 (La.1991); Cambre v. St. Paul Fire & Marine Insurance Co., 331 So.2d 585 (La.App. 1 Cir.1976). This temporary fictional existence permits the partnership to liquidate its affairs, perform existing contracts, collect its debts, pay its obligations and distribute its assets |7according to the partnership agreement. La.Civ.Code arts. 2832, 2833, 2834 and 2835. (Emphasis provided). See also Edco Properties v. Landry, 371 So.2d 1367 (La.App. 3 Cir.), writ denied, 375 So.2d 945 (La.1979). Furthermore, La.Civ.Code art. 2823 states:
The former partner, his successors, or the seizing creditor is entitled to an amount equal to the value that the share of the former partner had at the time membership ceased.
After reviewing the record in entirety, we are convinced the evidence establishes the partners did not dissolve the partnership intending to pay off creditors or even to partition the property between themselves. All the partners, including Cook, acknowledge their real concern was to insulate themselves from individual liability for the acts of the partners or partnership; and, to accomplish this end, they sought to change their business entity from a partnership to a corporation. The facts in this case mirror those considered by the court in Maryland Casualty Company v. Bedsole & Shetley, 228 F.Supp. 521 (W.D.La.1964) in material part. Having the same intent as the partners in this ease, the partners in Maryland Casualty Company formed Bedsole & Shetley, Inc. and conveyed all partnership property to it in documents containing the following language:
The true consideration for the execution of this deed is that it forms a portion of the transfer to the purchaser herein of all of the assets of the partnership of Bedsole & Shetley, previously wholly owned by the venders herein, and the vendors herein, in return for this and other properties, will receive all the capital stock of the purchaser herein.
******
All of those properties and assets heretofore belonging to the two vendors herein in *813 Partnership and under the partnership name, Bedsole & Shetley, and more particularly including all the Movable property listed on the | gattached inventory.
Id. at 526
While noting “there was no dissolution of the partnership prior to transfer of the partnership assets to the corporation,” the court nevertheless found “upon transfer of all such assets the partnership ceased to exist,” citing La.Civ.Code art. 2876 and Monteleone, 57 So.2d at 261. Continuing the court stated “[b]y this transfer the partners could not and did not avoid personal liability to partnership creditors, and there is no indication that this was their purpose.” Similarly, in Monteleone the court held “[a] partnership and a corporation are two different and distinct legal entities; the rights and obligations of a partner are not at all similar to the rights and obligations of a stockholder in a corporation.” The act of transfer by the partners in Monteleone also recited “as one of the considerations, [the corporation] assumed all the debts and liabilities of the partnership.” Although the assumption by the corporation of the partnership potential liability did not insulate the partners from individual responsibility for the claims of pri- or creditors, nonetheless as consideration for the act of transfer they were entitled to seek indemnity from the corporation for any payr ments, legally owed, which might be demanded from them by virtue of their partnership relationship.
Like the Monteleone and Bedsole & Shet-ley partners, the Gist partners argue Cook agreed to exchange his 12% interest in the partnership on December 31,1990 for 12% of the Gist PLC stock. The partners, except Cook, all testified that each of them including Cook exchanged their respective interests in the partnership for equivalent shares of stock in the Gist PLC. Attached to the partnership’s 1990 tax return is a schedule prepared by the firm’s CPA which recites: “The partnership distributed the following assets and liabilities to the partners according to their | prospective profit and loss percentages: (here follows a list of figures) [and][t]he partners in turn transferred the assets and liabilities to Gist, Methvin, Hughes & Munster-man, a professional law corporation.” Cook’s silence at the December 18 meeting, and his subsequent participation in the activities of the corporation are enough to convince us he at least acquiesced in the transfer, though unwritten, of .the partnership assets to the corporation.

Adequacy of Consideration

Still, Cook swears he did not agree “to miraculously convert [his partnership assets] into corporate shares which were being sold for [only] $1.00 a share.” Simply framed, the real issue in this case (as Cook himself posits) is whether the stated consideration, 120 shares of stock in the Gist PLC for his 12% interest in the partnership, was adequate. It is not whether the partnership was terminated (as we have found occurred in this ease) or whether it continues to exist fictionally for the purpose of paying third party creditors as some courts have found in other eases and La.Civ.Code art. 2835 seemingly mandates. Nothing, in the law or jurisprudence, prevents partners from exchanging their partnership interests for shares of stock in a corporation.
We accept as true Cook’s assertion that he did not intend to “miraculously” convert his 12% interest in the partnership’s assets, then valued at $6,538.20, to shares of stock in the Gist PLC having an issuing value of $1.00 per share. If such was so, we would be compelled to find Cook did not receive adequate consideration for his ownership interest in the partnership. But we know the value of the corporation’s original stock issuance reflects its worth only at the instance of formation; and, not thereafter. The Corporation’s 1991 tax return show on Form 1120, Schedule L, line 22b, that its common stock at the beginning of the year was | ipvalued at $54,485. Simultaneous with the exchange, the value of the corporation’s stock increased and so did the consideration received by Cook for his interest. The records, thus, evidence the value of Cook’s interest in the corporation on January 1, 1991 equaled, to the penny, his interest in the partnership’s assets. His complaint, thus, is without merit.
Furthermore, we have considered the remaining error assigned by Cook and find it, *814 too, lacks merit. We are not called at this juncture to determine the “true value” of Cook’s interest in the corporation at present or on the date of his separation; and, he has not alleged the corporation or its officers have attempted to buy him out at an inadequate price or they have artificially attempted to depress the value of his interest in the corporation.
DECREE
For the foregoing reasons, we affirm the trial court’s judgment. All costs on appeal are assessed against appellant, Steve Cook.
AFFIRMED.
WOODARD, J., concurs in the result.