[Filed July 8, 1891.]

## J. W. COOK v. THE PORT OF PORTLAND.

CONSTITUTIONAL LAW—STATUTE PRESUMED VALID.—Before a statute is declared void, in whole or in part, its repugnancy to the constitution ought to be clear, palpable and free from doubt.

MUNICIPAL PURPOSES—PUBLIC CORPORATION.—A corporation created for municipal purposes is one established by law for public or governmental objects, subject to the control of the legislature, with certain delegated political powers to be exercised for the public good in the administration of civil government, and whose members are citizens, not stockholders.

UNIFORM TAXATION—LEGISLATIVE POWER.—The legislature has undoubted authority to apportion a public burden among all the taxpayers of the state or among those of a particular section, if, in its judgment, those of a single section may reap the principal benefit from the proposed expenditure.

STATUTORY CONSTRUCTION—PORT OF PORTLAND.—The act of February 18, 1891, establishing the port of Portland, forms a corporation for municipal purposes, and is therefore not within the provision of the constitution against creating corporations by special laws; neither does it violate the constitutional provision that all taxation shall be equal and uniform.

Multnomah county: L. B. STEARNS, Judge.

Plaintiff appeals. Affirmed.

*C. A. Dolph*, for Appellant.

*Ellis G. Hughes*, for Respondent.

BEAN, J.—This suit involves the constitutionality of an act of the legislative assembly of this state, entitled "An act to establish and incorporate the port of Portland, and to

provide for the improvement of the Willamette and Colum-
bia rivers in said port and between said port and the sea."
(Laws of 1891, 791.)   This act in terms creates a separate
district, with defined boundaries, which embraces substan-
tially what was at the time of the passage the cities of Port-
land, East Portland, and Albina, and now the city of Portland,
to be kown as the port of Portland, and the inhabitants
thereof are constituted and declared to be a corporation by
the name and style of the port of Portland, and as such to
have perpetual succession, and by said name to exercise and
carry out all the corporate powers and objects by said act
conferred and declared; make all contracts; hold, receive
and dispose of real and personal property, such as may be
necessary, requisite or convenient in carrying out the objects
of said corporation as therein set out and expressed, and sue
and be sued, plead and be impleaded in all actions suits
and proceedings brought by or against it.   By said act it is
declared that the object, purpose and occupation of such cor-
poration shall be to so improve the Willamette river at the
cities of Portland, East Portland, and Albina, and the Wil-
lamette and Columbia rivers between said cities and the sea,
that there shall be made and permanently maintained
therein a ship channel of good and sufficient width, hav-
ing a depth at all points at mean low water, both at said
cities and between said cities and the sea, of not less than
twenty-five feet.   So far as is necessary, requisite or con-
venient to carry out the said object, this corporation is given
full control over said rivers at and between said cities and
the sea, so far and to the full extent that this state can grant
the same, and in carrying on said work is given the same
power of eminent domain as exists under the laws of this
state in favor of corporations organized for the construction
and operation of railroads.   For the purpose of providing
funds necessary for such improvement, said corporation is
authorized from time to time to borrow money in such sums
as may be found necessary, not exceeding the sum of $500,000,
and to issue its promissory notes or bonds therefor, and is

given power to assess, levy and collect taxes upon all property, real and personal, within its boundaries, and which is by law taxable for state and county purposes, not exceeding the rate therein provided. The power and authority given to the corporation, the port of Portland, is vested in and to be exercised by a board of commissioners, named therein, and their successors in office, chosen as in said act provided, who shall serve without salary or compensation, except for actual expenses incurred by any commissioner while engaged in the actual work of the corporation.

At the outset it is well to observe that every court approaches with hesitancy the question of declaring a law unconstitutional, and never exerts its power so to do while doubt exists. Every intendment must be given in favor of its validity. As was said by LORD, J., in *Cline* v. *Greenwood*, 10 Or. 241, "Before a statute is declared void, in whole or in part, its repugnancy to the constitution ought to be clear and palpable and free from doubt. Every intendment must be given in favor of its constitutionality. Able and learned judges have with great unanimity laid down and adhered to a rigid rule on this subject. Chief Justice MARSHALL, in 5 Cranch, 128; Chief Justice PARSONS, in 5 Mass. 534; Chief Justice TILGHMAN, in 3 S. & R. 72; Chief Justice SHAW, in 13 Pick. 61, and Chief Justice SAVAGE, in 1 Cowan, 564, have with one voice declared that, 'it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts be considered void. The opposition between the constitution and the law should be such that the people feel a clear and strong conviction of their incompatibility with each other.'" Keeping these views in mind, we proceed to the examination of the question before us.

It is first contended by plaintiff that the act incorporating the defendant, the port of Portland, is repugnant to section 2 of article XI of the constitution, which provides that "corporations may be formed under general laws, but shall not be created by special laws, except for municipal pur-

poses." Under this section there can be but one question: What is a corporation created for municipal purposes?

No corporation can be created by special act except for municipal purposes; but there is no limitation on the creation of corporations for municipal purposes by special act. Any corporation for municipal purposes may therefore be thus created. If, then, the port of Portland is a corporation created for municipal purposes, the act creating it is not repugnant to this section of the constitution. The whole question, therefore, turns upon the meaning of the phrase "municipal purposes," as used in the constitution.

The word municipal is defined by the lexicographers as belonging to a city, town or place having the right of local government; belonging to or affecting a particular state or separate community; local; particular; independent. It is usually applied to what belongs to a city, but has a more extensive meaning, and is in legal effect the same as public or governmental as distinguished from private. (Burrill, title "Municipal.") Thus we call municipal law not the law of a city only, but the law of the state. (1 Blackst. Com.) Municipal is used in contradistinction to international. Thus we say an offense against the law of nations is an international offense; but one committed against a particular state or separate community is a municipal offense. And so are municipal affairs public affairs, and municipal purposes are public or governmental purposes as contradistinguished from private purposes. A corporation, therefore, created for municipal purposes, is a corporation created for public or governmental purposes, with political powers to be exercised for the public good in the administration of civil government, whose members are citizens, not stockholders; an instrument of the government with certain delegated powers subject to the control of the legislature, and its members officers or agents of the government for the administration or discharge of public duties.

A city or purely municipal corporation is perhaps the highest type of corporation created for municipal pur-

poses, because it is a miniature government, having legislative, executive and judicial powers, but there is another class of corporation, such as counties, school districts, road districts, etc., which though varying in application and peculiar features, are but so many agencies or instrumentalities of the state to promote the convenience of the public at large, and are, in the broadest use of the term, for municipal purposes. It would be a narrow and unwarranted construction of language to say that municipal purposes means only city, town or village purposes. The constitution of this state evidently contemplates the creation of counties under the direct supervision of and by a special act of the legislature, yet no direct power is given to create them, and the section under consideration contains a direct prohibition against doing so, unless the word municipal covers this class of corporations. We thus perceive that the word municipal not only applies to cities, towns and villages, but has a broader and more general signification relating to the state or nation. And therefore the words municipal corporations, as applied to incorporated cities or towns, and municipal purposes are not synonymous. The latter embrace, by the common speech of men, before and since the days of Blackstone, state or national purposes. And therefore, while cities, towns and villages are for municipal purposes, there are also other corporations for municipal purposes that are not of that class.

It was in the broader and more general sense of the term that the words municipal purposes were used in the constitution of this state. This is evident from section 9 of the same article of the constitution, wherein it is provided that no county, city, town or other municipal corporation, by a vote of its citizens or otherwise, shall become a stockholder in any joint stock company, corporation, etc. Here is a direct interpretation from the constitution itself. A municipal corporation is not necessarily a county, city or town. Were it so, the added words, "or other municipal corporations," would be without meaning. Clearly, a corporation

for municipal purposes is one composed of citizens as distinguished from stockholders,—a public as distinguished from a private corporation.

In *Curry* v. *The Dist. Twp. of Sioux City,* 62 Iowa, 104, it is said: "The word municipal, as originally used in its strictness, applied to cities only; but the word now has a much more extended meaning, and when applied to corporations the words political, municipal and public are used interchangeably." In *Horton* v. *Mobile School Com.* 43 Ala. 598, an act had been passed which repealed all prior laws upon the subject of taxation, except those created for municipal purposes, and it was held that these are not words of technical import, and should be construed to apply to a corporation to carry on a public free school and to raise funds for its support. In *People* v. *Solomon,* 51 Ill. 37, under an act of the legislature providing for the location and maintenance of a park for the towns of South Chicago, Hyde Park and Lake, those towns were erected into a park district, and the people of the town affected by the act, having by a vote accepted its provisions, the board of park commissioners thereby created and appointed by the governor, to whom was committed the entire control of the park, was held to be a municipal corporation in whom it was competent for the legislature to vest the power to assess and collect taxes within the park district so created for the special corporate purpose of its creation; and this was under a constitutional provision similar to ours. Mr. Chief Justice BREESE, on page 52, says: "One of the counsel for respondent asks, of what character is the corporation thus endowed with extraordinary unheard of and unknown powers and privileges?" And, after defining the several kinds of corporations, he asks: "To which of these divisions of public corporations do the South Park commissioners belong? The answer is ready and obvious. By the vote of the people within the jurisdiction of their action, they became a corporate authority *quasi* municipal, the object of their creation being of a municipal character, and of that alone. They became a public

*municipal corporation.*" So in *People* v. *Trustees of Schools,* 78 Ill. 136, Mr. Justice WALKER, in treating of the power and authority of school townships under the constitution of that state to subscribe for the capital stock of railway companies, says: "These school townships were created and are continued for school purposes alone, and not for municipal purposes. They are only intended to establish schools and loan and manage the school funds of the township and pay the teachers of schools taught in their jurisdiction. This was the purpose of their organization. They were not created to exercise any of the functions of government, and hence are not municipal in their nature or purpose, nor are they provided with the officers or the power to exercise the functions of government." The test of a corporation for municipal purposes, adopted by the court, seems to have been the right or power to exercise some of the functions of government, and this we apprehend is the true test. In the case of *State* v. *Leffingwell,* 54 Mo. 458, cited and relied on by counsel for plaintiff, the same principle is clearly recognized, under a constitutional provision similar to ours. In the first opinion, there is a tendency to hold that nothing but a city or some corporation connected therewith and instituted for the purpose of carrying out some of the known objects of municipality, is a corporation created for municipal purposes; but in the opinion, on a motion for a rehearing, after citing the provisions of the constitution, this language is used: "From these provisions it is manifest that the legislature is prohibited from creating any sort of corporation by special act, except such as are for municipal purposes. A corporation for municipal purposes is either a municipality, such as a city or town created expressly for local self-government, with delegated legislative powers; or it may be a subdivision of the state for governmental purposes, such as a county, a school or road district, etc. These subdivisions are sometimes called *quasi* corporations, but they are, nevertheless, corporations within the meaning of the constitution. It was, therefore, eminently proper in

framing the constitution that there should be no express or implied prohibition against creating such subdivisions or *quasi* corporations for municipal purposes. The phrase municipal purposes was intended to embrace some of the functions of government, local or general, and no corporation not exclusively designed for this end can be properly denominated a corporation for municipal purposes." And again: "The aim of the constitution was to prevent the creation of corporations by special legislation, except for a particular purpose. In framing this prohibition, it was necessary to exclude the idea that *quasi* corporations or subdivisions of the state for municipal purposes were to be embraced among the inhibited acts of the legislature. No language could have expressed this more clearly than the phrase 'except for municipal purposes,' as used in the constitution."

We have not overlooked the cases of *Low v. Mayor*, 5 Cal. 214, and *San Francisco v. Spring Valley Water Co.* 48 Cal. 493, cited by counsel for plaintiff, but we do not think they conflict with the doctrine we are attempting to announce. In the former, the court held that a private corporation organized to run steamboats, with one of its termini in the city of Marysville, was not a corporation created for municipal purposes, so that the legislature could authorize the city to subscribe for its stock; and in the latter it was held that the legislature could not confer upon a private corporation by special act the right or duty to supply the city of San Francisco with water.

The purposes and powers of the port of Portland are all public, political or governmental. It possesses none of the features of a private corporation. There is no stock to be subscribed. Its members are citizens, not stockholders. There is no acceptance necessary, and its powers and very existence are at the will of the legislature. The sole object of the corporation is to so improve the Willamette and Columbia rivers at the city of Portland and between that point and the sea as to create and maintain a ship channel

of a specified depth, and for this purpose it is given full power over these rivers, so far as the state can grant the same. There is no power to take tolls or make profit of any kind. No private interests of any kind are granted or acquired. The highway to be created or improved belongs to the public, and is open to the whole public to be used at will, and with such means of navigation as taste, pleasure or convenience may dictate.

No one questions that the establishment and improvement of highways and the opening of facilities for access to market are within the governmental powers of every state or nation, and that among the most important of these highways are to be classed navigable rivers. These things are necessarily done by law. The state may directly levy taxes to improve such highways, or it may apportion and impose the duty, or confer the power of assuming it upon the municipal divisions of the state, or create a municipal division locally benefited for that express purpose. These municipal corporations or divisions exist only for the convenient administration of the government. Such organizations are instruments of the state to carry out its will. When they are authorized to levy a tax or appropriate its proceeds, the state is doing through them indirectly what it might do directly. The rivers placed under the control of this corporation are not only navigable but are the great commercial highway, not only of this state but largely of the entire Northwest. The only powers conferred upon the port of Portland, except the necessary incidental powers of holding the property and making the contracts necessary to carry out the main purpose, are the control and improvement of this public highway and the levy and collection of taxes therefor. The port of Portland and the commissioners who exercise its powers are nothing more than the agents of the state delegated to exercise one of its highest prerogatives, the taxing power, in carrying out one of its best-known and recognized objects and most important

duties, the improvement of a great and important public highway.

It is also contended that this act is unconstitutional as being in violation of section 32, article I, of the constitution, providing that "all taxation shall be equal and uniform." Counsel for plaintiff admits the general rule that a tax is not unconstitutional for lack of uniformity, when levied for local purposes, if it is equal and uniform throughout the taxing district, but his contention is that to authorize the legislature to lay a tax upon one district or subdivision of the state alone, the purpose for which it is laid must not only be public, but, as regards the people of such district or subdivision, it must also be local. This is admitted by counsel for respondent to be the correct rule, but he contends, and we think correctly, that the power of taxation here under consideration is not subject to objection under this rule. It is a fact of which this court will take judicial knowledge, that the port of Portland, a district which is now the city of Portland, is the commercial metropolis of the state of Oregon, if not of the whole Pacific Northwest. It is the center of trade and commerce for a vast section of country, simply because here the commerce of land and sea meet, and through this city the country trades with the world at large. It holds communication with the sea, the great highway of commerce, by the Willamette and Columbia rivers, and can only retain its commercial supremacy by the maintenance in these rivers of a ship channel of sufficient depth to enable the largest sea-going vessels to find anchorage at its wharves. Its present prosperity is due to the fact that it is a center of trade and commerce, which it would not be were these rivers closed, and which in all probability it will not remain if the improvement contemplated is not made. It is not surrounded by any fertile farming districts, rich mines or vast forests, to make it a local center, but depends entirely upon its trade and commerce.

Counsel has well said "that the maintenance of this great commercial center at this point is of advantage to the whole

state, is witnessed by the fact that it does its business here; that anything that will cheapen the handling of what the country exports and imports will be a benefit to all, is a self-evident fact, and leaves no doubt of the public interest in this improvement. But the public might find other centers of trade, other channels of export and import, presumably not so advantageous, or it would now use them, but still capable of use at need. But the center of trade and commerce, the port of Portland, cannot go elsewhere; it must live or die here. In the public the interest is general, the improvement and maintenance of an advantageous channel of trade. To the metropolitan district, center of trade and commerce, city, cities, or what you will, embraced in the port of Portland, the interest is one of life and death."

The people of the port of Portland, therefore, will reap the principal benefit from the proposed expenditure, and it is not unconstitutional that they should bear the burden. As was said by Mr. Justice STRONG, in *Railroad Co. v. County of Otoe*, 16 Wall. 676: "The legislature has the undoubted power to apportion a public burden among all the taxpayers of the state, or among those of a particular section, if, in its judgment, those of a single section may reap the principal benefit from a proposed expenditure, as from the construction of a road, a bridge, an almshouse or a hospital. It is not unjust, therefore, that they should alone bear the burden. This subject has so often been discussed, and the principles we have asserted so thoroughly vindicated, that it seems to be needless to say more or even to refer at large to the decisions."

It follows, therefore, that the act incorporating the port of Portland is constitutional and valid, and the decree of the court below must be affirmed.

STRAHAN, C. J.—I dissent.