# SCHOOL DISTRICT No. 12, WASCO COUNTY ET AL, *v.* WASCO COUNTY ET AL; DEPARTMENT OF REVENUE, *Intervenor.*

Charles A. Phipps and Keith A. Mobley, Phipps, Dunn & Mobley, The Dalles, represented plaintiffs.

M. D. Van Valkenburgh, Heisler and Van Valkenburgh, The Dalles; James C. Donnell, District Attorney of Wasco County, The Dalles, represented defendants; Ira W. Jones, Assistant Attorney General, Salem, represented the intervenor, Department of Revenue.

Decision for defendants rendered September 20, 1973.

CARLISLE B. ROBERTS, Judge.

Plaintiffs seek declaratory relief under ORS ch 28, contending that ORS 311.806 (3) is unconstitutional. The plaintiffs are taxing districts and certain individual taxpayers whose taxing districts are located in Wasco County tax code areas different from those in which the defendant taxing districts are located.

The parties have stipulated most of the pertinent facts. After prolonged negotiation as to the true cash value of property in Wasco County assessed to Harvey Aluminum (Inc.), the predecessor of the present owner, Martin Marietta Aluminum, Inc., consent decrees were entered in this court on June 19, 1972, in three cases, relating to the tax years 1969-1970, 1970-1971, and 1971-1972, ordering reduction in the amount of the true cash value of the property for such years. The amount of taxes levied and overpaid for the three years was $292,762, without interest, and this was refunded to the taxpayer January 24, 1973. In addition, a credit of $28,975 was taken by the taxpayer against its unpaid 1971-1972 real property tax on August 15, 1972. The total of the cash refund and the tax credit was $321,737. The tax refund and credit were accounted for by the tax collector of Wasco County pur-

suant to ORS 311.806 (3) (Oregon Laws 1971, ch 737, § 3), which instructed him as follows:

"Immediately upon payment of the refund and any interest thereon, the tax collector shall make the necessary correcting entries in the records of his office, and the county treasurer shall reimburse the general fund in the amount of the refunded tax and any interest paid thereon, from the unsegregated tax collections account provided in ORS 311.385."

The use of the "unsegregated tax collections account" is explained in ORS 311.390 to 311.395. ORS 311.385, cited in ORS 311.806, as amended by Oregon Laws 1971, ch 737, § 4, reads as follows:

"The taxes collected by the tax collector pursuant to this chapter shall be deposited daily with the county treasurer who shall deposit it to an account in his records designated unsegregated tax collections. The tax collector shall take a receipt therefor."

For many years prior to the 1971 session of the Legislative Assembly, ORS 311.806 and its predecessor, ORS 311.805 (see Oregon Laws 1959, ch 554, § 1), relating to property tax refunds, provided that:

"(3) Immediately upon reimbursement [of a refund by the county court], the tax collector shall make the necessary correcting entries in the records of his office and each taxing district or tax levying body shall reimburse the general fund in the amount of the refunded taxes received by it."

Oregon Laws 1963, ch 606, § 2 (codified as ORS 311.385), created new provisions, restricted to counties with a population of 80,000 or more, as follows:

"(1) In counties having a population exceeding 80,000, the taxes collected by the tax collector pursuant to this chapter shall be deposited daily with

the county treasurer who shall deposit it to an account in his records designated unsegregated tax collections. The tax collector shall take a receipt therefor.

"(2) In counties having a population exceeding 80,000, the reimbursement to the general fund of the county for refunds required by ORS 311.806 * * * shall be made from the unsegregated tax collections account provided in subsection (1) of this section."

Oregon Laws 1969, ch 595, § 6, amended ORS 311.-385 by deleting the words, "In counties having a population exceeding 80,000," making the section applicable to every county in the state.

In spite of the reference in the original ORS 311.385 to ORS 311.806, which requires that reimbursement of the general fund of the county for refunds required by ORS 311.806 be made from the unsegregated tax collections account, no amendment was made to ORS 311.806 (3) prior to 1971 (see ORS Replacement Parts 1963, 1965, 1967 and 1969). Until that year, the subsection continued to read that "* * * the tax collector shall make the necessary correcting entries in the records of his office and each taxing district or tax levying body shall reimburse the general fund in the amount of the refunded taxes received by it." Plaintiffs argue that this fact should be given significance in the court's consideration of this suit. However, pursuant to ORS 174.050 and the case law, the tax collectors have deemed the later act, codified as ORS 311.-385, to control and supersede the older act, codified as ORS 311.806 (3), and all refunds have actually been made from the unsegregated tax collections account. The court finds this to be in accord with legislative intent. Oregon Laws 1971, ch 737, § 3, brought the

two statutes into conformity, ORS 311.806 (3) now reading:

"Immediately upon payment of the refund and any interest thereon, the tax collector shall make the necessary correcting entries in the records of his office, and the county treasurer shall reimburse the general fund in the amount of the refunded tax and any interest paid thereon, from the unsegregated tax collections account provided in ORS 311.385."

■ Clearly, the 1971 amendment was a "housekeeping" measure and did not change the legal effect of the prior law. This conclusion follows the accepted principle of statutory construction embodied in ORS 174.010. The court finds that the provisions of ORS 311.385(2) have been the law applicable to Wasco County since 1969 when the statute was made applicable to all Oregon counties.

It is thus seen that, under the prior law, an approved claim for refund imposed a substantial bookkeeping effort upon the tax collector and upon each affected taxing district. All entries of value in the tax roll relating to the refund were corrected and then each taxing district in the affected code area (ranging from a few to a substantial number of such districts) had to make a proper remittance to the county, even though the amount involved only a few cents. Multiplied by the number of refund claims allowed in a fiscal year, the administrative cost could be high. The need for this was eliminated by the amended law and at the same time another benefit to the taxing district was sought and obtained; i.e., the quick turnover of funds received by the tax collector to the county treasurer and the immediate deposit of the funds at interest, which accrued proportionately to the benefit of each taxing district.

Plaintiffs have no objection generally to the provisions of ORS 311.385, creating the unsegregated tax collections account. However, they contend that the former provisions of ORS 311.806 (3) should be followed with respect to refunds to taxpayers, requiring the tax collector to make the necessary correcting entries in the records of his office and imposing on each taxing district or tax levying body the duty to reimburse the general fund of the county in the amount of the taxes received by it and now refunded.

■ Plaintiffs have pleaded (Amended Complaint, ¶ XII) that the result of compliance with ORS 311.806 (1) and (3) by the Wasco County Treasurer, Assessor and Sheriff will result in the taxing bodies, which received all of the taxes paid by Harvey Aluminum (Inc.) and by Martin Marietta Aluminum, Inc., for the years in question, being charged only the sum of $171,007 instead of the total amount of $321,737 of refunds and credits allowed by the consent decrees. They plead further (Amended Complaint, ¶ XIII) that plaintiff School District No. 12 will lose approximately $80,153 from its tax levies, although District No. 12 received none or, at most, a minimal amount of the taxes paid by the aforesaid taxpayers to the tax collector. Further (Amended Complaint, ¶ XIV), it is alleged that the plaintiffs who are individual taxpayers (who were made parties herein at the court's suggestion) paid property taxes to School District No. 12 and to the City of The Dalles in the years in question and that some of these taxes will be diverted to other taxing districts without benefit to these plaintiffs.

These allegations were denied by the defendants. Plaintiffs' evidence in support of them appears to rest largely on the court's power to take judicial notice of

official acts and records and the inferences to be drawn therefrom. Only two witnesses were produced and their testimony preponderates for the defendants. The stipulations, made part of the record, lend little support, if any, to plaintiffs' allegations.

It appears to the court that the plaintiffs' theory is that a refund of levied taxes having been made in the sum of $321,737 by Wasco County, it follows, without demonstration, that all the taxing districts will suffer, particularly those plaintiff districts lying outside the code area in which lies the property benefited by the refund.

That such a consequence does not follow a fortiori seems apparent upon a study of the Local Budget Law, ORS 294.305 et seq., and the State of Oregon's *Budget Manual for Municipal Corporations* (Department of Revenue, Salem, rev. January 1972). What actually occurs is explained in the intervenor's brief, at page 8, beginning at line 23:

"* * * The reason for this is that it is a matter of conjecture as to exactly what effect the refund under either method [a reference to the Stipulation, at 3-4] may have on future levies. Much will depend upon the budgeting procedures of the municipal corporation, that is, were there overestimations of expenditures and underestimations of revenues; were delinquent taxes to be received over or underestimated; were beginning cash balances adequately stated; did more revenue accrue to the district than could have been anticipated; was the estimation of taxes not to be collected during the current year higher or lower than actual events without the refunds would indicate; were there a great many additions of omitted property to the roll which would take up much of the slack created by the refund in the current year and many other factors which could either add to or alleviate

the adverse effects of the refund. Only after these effects are known at the close of the fiscal year ending June 30, 1973, will the effect on tax levies be known. * * *"

Although the sum involved represents a relatively large refund in terms of dollars, it amounts to only about four percent of the total county levies. Four percent is less than the percentage allowed as an arbitrary increase in a budget as an offset to anticipated uncollectible taxes.[1]

The court concludes that the plaintiffs' several arguments, other than those based upon constitutional prohibitions and restrictions, are irrelevant, because the Legislative Assembly has plenary power to enact the statutes quoted above. Oregon Constitution, Art IV, § 1 (1). *Wright v. Blue Mt. Hospital Dist.,* 214 Or 141, 328 P2d 314 (1958); *Jory v. Martin,* 153 Or 278, 285, 56 P2d 1093, 1095 (1936); *Cook v. The Port of Portland,* 20 Or 580, 27 P 263 (1891). And see Linde, *Without "Due Process,"* 49 Or L Rev 125, 149 (1970). Only constitutional questions need be studied.

In their amended complaint, ¶ XV, plaintiffs have

---

[1] The Local Budget Law provides for "estimation" of revenues, expenditures and proposed levies. ORS 294.321 (3). A budget document on which a levy is based is an "estimate" of proposed expenditures. ORS 294.311 (5). Budget resources of necessity must be largely based on estimates. ORS 294.361. While the thrust of the Local Budget Law is to insure accountability and to prohibit hidden funds, some hedging against a deficit is permitted. See, for example, ORS 294.371 and 294.381 (4); see also the *Budget Manual for Municipal Corporations, supra,* at 12, with regard to estimate of the collection factor of "taxes not expected to be collected (including discounts)." The example used allows a 15 percent factor. As Mr. Justice Holmes has written, "* * * some play must be allowed to the joints if the machine is to work." *Tyson & Bro. v. Banton,* 273 US 418, 445–446, 47 S Ct 426, 71 L Ed 718 (1927), quoted in Linde, *Without "Due Process,"* 49 Or L Rev 125, 151 (1970).

alleged that ORS 311.806 (3) is unconstitutional and void, setting out their reasons in four different categories. These will be examined in the order in which they were pleaded.

> "1. It discriminates unfairly and inequitably, without a rational basis therefor, against plaintiffs and others similarly situated, in violation of Article I, Section 20 and Section 32, and Article IX, Section 1 of the Constitution of the State of Oregon and the Fourteenth Amendment to the Constitution of the United States; * * *."

■ Turning first to the Oregon Constitution, Art I, § 20, reads:

> "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

It is obvious that ORS 311.806 (3) treats equally all municipalities and all taxpayers who are affected by it. No special "class" with particular privileges is created by this legislation. All taxing districts similarly situated are treated alike. There is no evidence in this record that any plaintiff has been injured. On the other hand, ORS 311.806 and ORS 311.-385 to 311.395 create a useful system, in the form of a trust fund, which pools all property tax receipts (including erroneous overpayments), making possible the apportionment of tax revenues to the several taxing districts without regard to the differences between rich districts and poor districts, the differences between prompt and slow payments by taxpayers, and the like.

Oregon Constitution, Art I, § 32, also cited by the plaintiffs, reads:

> "No tax or duty shall be imposed without the consent of the people or their representatives in the

Legislative Assembly; and all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

No evidence has been produced to show that these requirements have not been met.

Oregon Constitution, Art IX, § 1, reads:

"* * * All taxes shall be levied and collected under general laws operating uniformly throughout the State."

Again, there is no evidence in the record which would show contravention of this constitutional requirement in the present case. Levy and collection are easily distinguished from refunds. No testimony has been produced tending to prove that refunds are not being made under "general" and uniform laws.

■ The plaintiffs have cited the U. S. Constitution, Amend XIV, presumably with reference to the second sentence of § 1 therein:

"* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It appears that plaintiff municipalities have no standing to cite the Fourteenth Amendment against the sovereign state. *Williams v. Baltimore,* 289 US 36, 53 S Ct 431, 77 L Ed 1015 (1933); *Miller v. Henry,* 62 Or 4, 124 P 197 (1912); *Yamhill County v. Foster,* 53 Or 124, 99 P 286 (1909); *Cook v. The Port of Portland, supra.* More importantly, neither the plaintiff municipalities nor the individual taxpayers who are plaintiffs herein have offered evidence in this court to show that

the Fourteenth Amendment has been violated by the state as to them.

Plaintiffs' second claim (Amended Complaint, ¶ XV) that ORS 311.806 (3) is unconstitutional is stated thus:

"2. It deprives plaintiffs and other [sic] similarly situated of property tax revenues raised through uniform assessment, levy, and collection procedures by requiring refund payments from said revenues to be made by a procedure which shifts the property tax burden without regard to, and in violation of the uniformity requirement of Article I, Section 32 and Article IX, Section 1 of the Constitution of the State of Oregon; * * *."

These allegations have already been answered in the paragraphs above, but it may be added that, in the view of the court, the pooled funds representing the unsegregated tax collections cannot be deemed to be mishandled when there is refunded from this unsegregated account a sum of money which, theoretically, should not have been there in the first place. However, accepting the fact that it was there, it must be taken for granted that every budget contemplates the necessity of making refunds and that the tax levies are purposely enlarged to meet this annual problem, based on the experience of prior years. (See reference to the Local Budget Law, *supra*.) There has been no showing in this suit that the tax levying bodies did not receive their levies in full, and there has been no showing that any additional levies were imposed upon the taxpayers in consequence of the refund being made. And, as has been pointed out in arguments before the court, the refund came *after* the constitutional provisions of uniformity with respect to assessment, levy and collection had been fully carried out. The refund was in furtherance of uniformity of assessment.

■ Plaintiffs' third contention (Amended Complaint, ¶ XV) with respect to the unconstitutionality of ORS 311.806 (3) is stated thus:

"3. By its operation and effect, it levies a tax upon plaintiffs and their individual taxpayers and the individual plaintiff taxpayers, and others similarly situated, without stating the object of such tax, in violation of Article IX, Section 3 of the Constitution of the State of Oregon; * * *."

The constitutional provision referred to reads, so far as it can be pertinent:

"No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied. * * *"

No specific evidence has been introduced to show that this constitutional provision has been violated in the present case. Plaintiffs' assumption appears to be that each levy, if placed before the people, would have to state that the statutes provide for refunds to be made as in this case. As has been said above, the payment of an uncertain number of refunds is an anticipated aspect of the tax procedures of any municipality. No statement of intent as to a levy can include all the minutiae of the bookkeeping of the taxing body; these will be anticipated by a reasonable person. No facts have been presented in the present case which would show that this provision of the constitution is properly invoked. See *Miller v. Henry, supra.* (The case of *Tuttle v. Beem,* 144 Or 145, 24 P2d 12 (1933), is distinguishable on the facts.)

■ The last provision in the pleadings (Amended Complaint, ¶ XV) which must be met states:

"4. The plaintiffs are deprived of their property without compensation and without due process

of law in violation of the Constitution of the State of Oregon and the Constitution of the United States. The consent to the refunds was given by the Department of Revenue of the State of Oregon with the knowledge of defendant Wasco County, but without informing the plaintiffs of the effect upon their tax revenues and tax obligations, and without notice and without opportunity for the plaintiffs to be heard."

The constitutional provisions referred to have not been cited by article and section. It is necessary to assume that Oregon Constitution, Art I, § 18, was intended, reading in part:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; * * *."

Here, again, not a scintilla of evidence has been offered to prove that there has been a taking of private property for public use, under the facts of this case. "Whether a governmental interference with private property has reached the point of 'taking' it for public purposes may depend on the assessment of factual evidence presented in a trial." *Goldblatt v. Town of Hempstead,* 369 US 590, 82 S Ct 987, 8 L Ed2d 130 (1962).

As to the reference to the U. S. Constitution, the language suggests that once again the Fourteenth Amendment was referred to. Based on what has been written above, this ground of contention is unavailable to the municipalities. As to the individual plaintiffs, it can only be reiterated that there is no evidence that they have suffered in any way which would give them standing in court.

Plaintiffs' complaint must be dismissed; the injunction issued December 19, 1972, by the court to the

county treasurer must be dissolved; the bond of School District No. 12, Wasco County, filed on December 26, 1972, will be released upon payment of any costs and disbursements found to be owing to the county treasurer; and the county treasurer must distribute the moneys held in the special account, ordered by the court on December 19, 1972, in accordance with ORS 311.806 (3) (Oregon Laws 1971, ch 737, § 3) without delay.