IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| OREGON SCHOOL BOARDS ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | TC-MD 140323D |
| v. | ) ) | |
| MARION COUNTY ASSESSOR, | ) ) | |
| Defendant. | ) | **FINAL DECISION** |

This Final Decision incorporates without change the court's Decision, entered August 14, 2015. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appeals Defendant's denial of its property tax exemption for property identified as Account R87795 (subject property) for the 2014-15 tax year. In an Order dated February 3, 2015, the court denied the parties' cross-motions for summary judgment. The court concluded that Plaintiff is a corporation for the purposes of ORS 307.090(1) but was unable to determine whether Plaintiff is a public corporation.

A trial was held in the Oregon Tax Courtroom, Salem, Oregon on May 13, 2015. Lisa M. Freiley, Attorney, Oregon School Boards Association, appeared on behalf of Plaintiff. Scott A. Norris, Assistant County Counsel, Marion County, appeared on behalf of Defendant. Betsy Miller-Jones (Miller-Jones), Executive Director Oregon School Boards Association; Jim Green (Green), Deputy Executive Director Oregon School Boards Association; Tricia Yates (Yates), Communication Director Oregon School Boards Association; Scott Neufeld, Director of Risk Management; and Darin Drill, Cascade School District Superintendent, testified on behalf of

/ / /

Plaintiff. Plaintiff's Exhibits 1 through 17 and Defendant's Exhibits A through C were admitted without objection.

## I. STATEMENT OF FACTS

A. *Membership in Association*

The parties stipulated to the following facts. Plaintiff is "an unincorporated association * * * founded in 1947 as a nonprofit voluntary state-wide association for school boards" whose membership is open to "all public school boards in the state." (Stip Facts at 1, ¶ 1, 3, ¶ 6.) Plaintiff's current membership is comprised of "196 K-12 school districts, 17 community colleges, 19 education service districts, 87 public charter schools and the State Board of Education." (*Id.* at 3, ¶ 5.) "Pursuant to Article 4 of [Plaintiff's] Constitution, all public school boards in the state are eligible for membership * * * and shall automatically become members upon payment of dues." (*Id.* at 3, ¶ 6.) Plaintiff's board is comprised of 21 directors, who are elected by member votes. (*Id.* at 3, ¶ 7.)

B. *Purpose of Association*

Miller-Jones testified that Plaintiff's core mission "is to advance student achievement in the state, for all students." Miller-Jones testified that those goals are accomplished "through service, leadership and advocacy to local school boards and districts." Plaintiff's stated purposes are set forth in Article 2 of its Constitution:

> "a. to work for the general advancement and improvement of the education of all youth of the State of Oregon;
>
> "b. to gather and disseminate information pertinent to the successful operation of public school[s];
>
> "c. to work for the most efficient and effective organization of public schools of this state. Public Schools include local school districts, education service districts and community colleges;

"d. to work for adequate and dependable financial support for the public schools of this state;

"e. to study all legislation which affects the public schools of Oregon and to support and work for that which appears to be desirable and to keep members informed thereof. To propose and work for the enactment of proper educational legislation;

"f. to cooperate and work with persons and organizations genuinely interested in public education;

"g. to encourage the establishment and maintenance of high standards in the conduct and operation of the educational endeavor;

"h. to study and interpret educational programs and to relate them to the needs of pupils;

"i. to promote public understanding of the role of school boards and school board members in the improvement of education;

"j. to conduct, independently or in cooperation with others, seminars, conferences, courses and research projects in the various aspects of education;

"k. to endeavor to implement the policies, beliefs and resolutions of the association.

"l. to do such other things as the member boards or board of directors may deem appropriate for the accomplishment of these and other purposes which tend to improve education;

"m. to provide such direct services to member districts and their board members as may be appropriate and authorized by the board of directors of the association;

"n. to enter into such cooperative agreement[s] with member districts for the pooling of resources as may result in the more efficient utilization of district resources and accrue to their financial advantage."

(Stip Facts at 2-3, ¶ 4; Def's Ex A at 3-4.)

Yates testified that she created campaigns that communicated Plaintiff's purpose to its members and the general public. Yates testified that videos are "part of a campaign, to talk about the importance of public education and the importance of investing at a state level so that [Plaintiff] can increase student achievement." Yates testified that those efforts led to increased

community support and awareness throughout the state. Green testified that many of the documents produced to benefit its members are also available online for the general public to view, and physical copies are sent to all member school districts as well as to the one school district in the state who is not a member. Green testified, "we believe that any service we provide derives benefits to kids so we want to make sure all members have it in their hands."

C.      *Funding*

The parties stipulated that Plaintiff's funds may only be used "to accomplish the purposes described in the Constitution * * * each of which directly or indirectly benefits [Plaintiff's] members." (Stip Facts at 4, ¶ 8.) Miller-Jones testified that Plaintiff's funds are obtained "about half * * * from investment income which functions as an endowment, and about half  * * *from dues paid by our members." Miller-Jones testified that the funds are obtained by members through "local school district budgets, which are public funds."

D.      *Use of Subject Property*

The parties stipulated that Plaintiff is the sole owner of subject property. (Stip Facts at 5, 6 ¶ 18.) Miller-Jones testified subject property is used by Plaintiff as a parking lot for its members who visit Salem for educational purposes, meetings, lobbying the legislature, and other functions. Miller-Jones testified that parking before Plaintiff purchased the subject property was not "conducive to employees or visitors performing their duties."

II.  ANALYSIS

The court accepts that "as a matter of general policy, the legislature has provided that all real and personal property within this state is subject to * * * taxation, 'except as otherwise provided by law,' ORS 307.030." *White City Water System, v. Dept. of Rev.*, 285 Or 255, 259, 590 P2d 724 (1979). In this case, Plaintiff alleges that ORS 307.090 is applicable to it, and

would exempt the subject property from taxation.[1] ORS 307.090(1) states that:

> "Except as provided by law, all property of the state and all public or corporate property used or intended for corporate purposes of the several counties, cities, towns, school districts, irrigation districts, drainage districts, ports, water districts, housing authorities *and all other public or municipal corporations* in this state is exempt from taxation."

(Emphasis added.) In analyzing whether the subject property is exempt from taxation, the court begins with whether Plaintiff is a public corporation.

The term "public corporation" is not defined by statute. Under Oregon's method of statutory construction, the court's task is to discern the legislative intent of the term public corporation. *PGE v. Bureau of Labor and Industries (PGE)*, 317 Or 606, 610, 859 P2d 1143 (1993). "In interpreting a statute, the court's task is to discern the intent of the legislature." *Id.*; ORS 174.020. To determine legislative intent, the court is first directed to interpret the text and context of ORS 307.090, and to give "words of common usage * * * their plain, natural, and ordinary meaning." *PGE*, 317 Or at 611; *see also State v. Gaines (Gaines)*, 346 Or 160, 171, 206 P3d 1042 (2009). "In trying to ascertain the meaning of a statutory provision, * * * the court considers rules of construction of the statutory text that bear directly on how to read the text. Some of those rules are mandated by statute, including * * * the statutory enjoinder 'not to insert what has been omitted, or to omit what has been inserted.' " *PGE*, 317 Or at 611, (citing ORS 174.010).

Second, "after examining text and context," the court may consider the legislative history of the statute; "an ambiguity in the text of a statute" is not a "necessary predicate to * * * consideration of pertinent legislative history * * *." *Gaines*, 346 Or 171-72; *see also* ORS 174.020. Finally, "[i]f the legislature's intent remains unclear after examining text, context, and

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Gaines*, 346 Or at 172.

A.      *Text and Context of Public Corporation*

One of the earliest definitions of public corporation came from the United States Supreme Court: "[p]ublic corporations are generally esteemed such as exist for public political purposes only, such as towns, cities, parishes and counties * * * but, strictly speaking, public corporations are such only as are founded by the government, for public purposes, where the whole interests belong also to the government." *Trustees of Dartmouth College v. Woodward*, 17 US 518, 668-669, 4 LEd 629, 4 Wheat 518 (1819). Black's Law Dictionary defined public corporation as "created by the State for political purposes to act as an agency in the administration of civil government, * * * such as a county, city, town, or school district." *Black's Law Dictionary*, 439 (3rd ed 1933). Historically public corporation was narrowly defined as an entity created and owned by the government for political purposes.

Before the term "public corporation" was enacted in the framework of ORS 307.090, the Oregon Supreme Court defined a public corporation in the context of analyzing municipal corporations. *Cook v. Port of Portland (Cook),* 20 Or 580, 27 P 263 (1891). The Oregon Supreme Court held that the word municipal "is in legal effect the same as public." *Id.* at 583. The court stated:

> " 'The word 'municipal,' as originally used, in its strictness applied to cities only. But the word now has a much more extended meaning, and, when applied to corporations, the words 'political,' 'municipal,' and 'public' are used interchangeably.'
>
> * * * * *
>
> "A corporation, therefore, created for municipal purposes, is a corporation created for public or governmental purposes, with political powers to be exercised for the public good in the administration of civil government, whose members are citizens * * *; an instrument of the government, with certain delegated powers,

subject to the control of the legislature and its members, officers, or agents of the government for the administration or discharge of public duties."

*Cook*, 20 Or 585 (citation omitted). After deciding that municipal corporations are the same as public corporations, the court defined their purpose and articulated a test: "The test of a corporation for municipal purposes, adopted by the court, seems to have been the right or power to exercise some of the functions of government, and this we apprehend is the true test." *Id.* at 586. Applying this test, the court analyzed a case that focused on school townships and their purpose.

> " 'These school townships were created and are continued for school purposes alone, and not for municipal purposes. They are only intended to establish schools, and loan and manage the school funds of the township, and pay the teachers of schools taught in their jurisdiction. This was the purpose of their organization. They were not created to exercise any of the functions of government, and hence are not municipal in their nature or purpose; nor are they provided with the officers or the power to exercise the functions of government.'"

*Id.* quoting *People v. Trustees of Schools,* 78 Ill 136, 138 (1875). That test was later used in *State ex rel Eckles v. Woolley (Eckles),* when Oregon's Supreme Court held that the State Accident Insurance Fund Corporation (SAIF) was a public corporation. 302 Or 37, 48-49, 726 P2d 918 (1986). The two factors the court used to conclude that SAIF was a public, rather than private, corporation were whether SAIF had stockholders and private management. *Id.* SAIF had no stockholders, and its management was "appointed by the governor, subject to confirmation by the Senate, and serve[d] at the governor's pleasure," resulting in it being a public corporation. *Id.*

The Oregon Supreme Court later expanded upon the federal interpretation and the *Cook* test, by defining public corporation as "a corporation formed for the public's benefit or for a public purpose." *Shasta View Irrigation Dist. v. Amoco Chemicals (Shasta View)*, 329 Or 151, 157, 986 P2d 536 (1999) (citing *Eckles*, 302 Or 48-49; *see also Black's Law Dictionary*, 1228

(6th ed 1990) (defining public corporations as a municipality or government corporation "created for the administration of public affairs").  In *Shasta View,* the court adopted the *Cook* test requiring that public corporations be publically owned and have public officers with the additional requirement that the entity serve a public benefit or purpose.

B.      *Lack of Legislative History; Statutory Construction Analysis*

Neither party offered legislative history in support of their arguments, nor did the court locate any relevant legislative history for ORS 307.090.  Because of the lack of legislative history, the court turns to maxims of statutory construction.  One such maxim is *ejusdem generis*, "which provides that where general words follow the enumeration of particular classes of things, the general words are to be construed as applicable to things of the same general nature or class." *Gaston v. Parsons*, 318 Or 247, 253, 864 P2d 1319 (1994) (citing *State v. Brantley*, 201 Or 637, 645, 271 P2d 668 (1954)).  "In 1945, the legislature expanded the list of exempt entities to include 'irrigation districts, drainage districts, ports, water districts and all other public or municipal corporations * * *.' " *Pacific States Marine Fisheries v. Dept. of Rev. (Pacific Fisheries)*, 346 Or 117, 126, 206 P3d 1037 (2009); *see also* Or Laws 1945 ch 296, §1.  Using the maxim *ejusdem generis*, public benefit or public purpose is interpreted in relation to the common characteristics found among a public corporation and the list of exempt entities.  *See Shasta View*, 329 Or at 157 (holding that an irrigation district is a public corporation).  Because Plaintiff is not one of the enumerated entities listed in ORS 307.090, this court will consider case law to determine whether Plaintiff is a public corporation, serving a public purpose or public benefit.

C.      *Public Benefit or Public Purpose*

The issue is whether Plaintiff benefits the public.  Plaintiff asserts that its activities are for the public benefit or serve a public purpose.  The court disagrees, and concludes that Plaintiff's

public benefit or public service may come from the activities of Plaintiff's members, not Plaintiff's activities which are specifically directed to its members.

In one of this court's prior cases, the plaintiff, Special Districts Association of Oregon (SDAO), stated its " 'mission is to assist special service districts in providing cost-effective and efficient public services to the people of Oregon.'" *Special Dists. Ass'n of Oregon v. Washington County Assessor (SDAO)*, TC-MD 050661D, WL 1674462 at *1 (2006). SDAO alleged that it was a public or municipal corporation and its property was entitled to tax exemption. *Id.* at 1. The court concluded SDAO was not a public corporation "[b]ecause [SDAO's] activities serve[d] or benefit[ed] its members rather than the public." *Id.* at *4. The court reviewed SDAO's Bylaws and Declaration of Trust, finding that SDAO provided benefits only to its members. *Id.* The court concluded that "[t]here is no evidence to show that Plaintiff's activities and the use of the subject property result[ed] in a benefit to the public." *Id.*

In *Carruthers v. Port of Astoria (Carruthers),* the court discussed the meaning of public purpose. 249 Or 329, 438 P2d 725 (1968). The court reviewed the Port of Astoria's proposal to sell revenue bonds to finance construction in determining whether the property to be constructed would serve a public purpose. *Id.* "Much has been written in the cases and law reviews * * * about public purpose. * * * 'The grounds for deciding such cases * * * are seldom articulated clearly. * * * [T]he relevant inquiry would seem to be whether the proposed project will augment the community's total value position.'" *Id.* at 341, citing 70 Yale L.J., at 791, 796. The court determined that implementing the Port of Astoria's proposal created "a general benefit to the economy of the community," resulting in a "public purpose [being] served." *Id.*

/ / /

/ / /

D.      *Application*

The court follows the same analysis from case law previously recited to conclude that Plaintiff is not a public corporation. The initial test from *Cook* asks if Plaintiff has the "right or power to exercise some of the functions of government." *Cook*, 20 Or 265. By applying the *Eckles* analysis to the facts of this case, the answer is no. Plaintiff's management structure differs from SAIF because its board of directors was elected by its members, whereas SAIF's management was deemed accountable to state government. (Stip Facts at 3, ¶ 7.) There is no evidence that Plaintiff's management was appointed by the governor or that Plaintiff fulfilled a state government function in contrast to primarily serving its members.

The court next considers the *SDAO* and *Carruthers* cases to determine Plaintiff's public purpose or public benefit. Yates testified that Plaintiff creates promotional videos that are shared with the public. Plaintiff alleged that the promotional videos had a public benefit, because the promotional videos increased student investment and awareness which has led to greater student achievement. The promotional videos were the only activity Plaintiff undertook or disseminated to the public. All other activities engaged in by Plaintiff were undertaken or disseminated to its members, rather than the public. The parties stipulated that Plaintiff's membership is only open to "public school boards in the state" and not private school boards. (Stip Facts 3, ¶ 6.) Plaintiff's Constitution explains that funding may only be used "to accomplish the purposes described in the Constitution * * * each of which *directly or indirectly benefits [Plaintiff's] members*." (Stip Facts at 4, ¶ 8) (emphasis added). Like SDAO, Plaintiff is primarily providing a service to its members, which allegedly helps its members operate more efficiently in providing benefits for the public. Plaintiff is not providing a public benefit or public purpose in the context of the tests established by Oregon courts – there is no evidence that Plaintiff's actions

render a "general benefit to the economy of the community." *Carruthers,* 249 Or at 341. The court concludes that Plaintiff's members may offer a public benefit or public purpose, but Plaintiff does not.

Oregon legislatures have not yet delineated the degree to which a public corporation must provide a public benefit or serve a public purpose. There is no statute providing for attribution of an association's members' activities to permit the association to qualify its property for tax exemption. Until such time as the legislature enacts clarifying legislation or another court decides to the contrary, this court will continue to require a public corporation's activities to be directed to a public benefit or public purpose if that public corporation is to meet the statutory requirements of ORS 307.090(1).

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court finds that Plaintiff does not have public benefit or public purpose and is not a public corporation. Because Plaintiff is not a public corporation offering a public benefit or serving a public purpose, Plaintiff's property is not tax exempt under ORS 307.090. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff does not meet the statutory requirement of ORS 307.090(1) for its property to be tax exempt. Plaintiff's appeal is denied.

Dated this _____ day of August 2015.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR. Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*
*This document was filed and entered on August 31, 2015.*